S. A. & A. R'Y CO. v. JOHN A. GWYNN.

(No. 3064.)

APPEAL from Colorado County. Opinion by DAVIDSON, J.

*(Transferred from Austin.)*

S. E. PATTON, counsel for appellant.

FORD & THOMPSON, counsel for appellee.

§ **219.** *Pleading; damages general and special, how.*
*alleged; damages held to be general; case stated.* On
October 8, A. D. 1889, appellee filed his first amended
original petition, setting up that he was a married man,
with a family composed of a wife and three children,
and owned a homestead on which they lived, consisting
of a lot or lots situated in Eagle Lake, Colorado county,
Texas; that the town was not incorporated, and the
streets, blocks and lots not named or numbered, and that
appellant constructed its road-bed, in 1887, close to and
across one corner of appellee's homestead, and threw up
a high embankment along this line, and cut wide and
deep ditches on both sides of the said track; that the em-
bankment and ditches extended for a long distance north
and east of said homestead, and cut and passed through
certain natural ponds and across large ditches dug to
prevent the water that fell upon the outlying land, and
accumulated in said natural ponds, from flowing down
upon the homestead of appellee; that before constructing
said ditches and embankment by appellant the said water
was carried off in another direction from appellee, and
that afterwards all this water was collected in the ditches
along appellant's road-bed, and led by its ditches down
and along its road-bed and discharged upon the home-
stead of appellee. Appellee further alleged that appel-
lant constructed a switch and a high embankment just
in front of his homestead, connecting it with the South-
ern Pacific Railway, and did not put under said embank-
ment any culvert through which the water could escape
that came down the road-bed of the Galveston, Harris-
burg & San Antonio Railroad, and which also came down
the road-bed of appellant, and that it also failed to put a
culvert under the main track opposite where the water
should pass under the switch and the point where said
main track crosses the large ditch parallel to the Gal-
veston, Harrisburg & San Antonio Railway Company,
which had previously carried off the water, and that the

water which was brought down by the ditch of the Galveston, Harrisburg & San Antonio Railway Company and by the ditches of appellant as aforesaid, every time there was a rainfall, was caught, held and ponded by the said switch embankment, and backed upon and over and ponded on his homestead, and there remained until evaporated and saturated; that this water, when so ponded and backed up, also covered the street or road which leads from appellee's house to the town, so that he and his family could not travel between his residence and the town of Eagle Lake by the usual, most direct and best route of travel, and that he and his family were thereby prevented from going to town and church, and his children from going to school; and by reason of this he has been actually damaged in the sum of $250. Appellee further alleges that two acres of his homestead tract have thereby been overflowed and ponded with water, so that he has been unable to use it for the purposes for which he has been accustomed to use it, viz., cultivate and use it for pasturage, and that the crops thereon sown and planted have been destroyed, and that he has been thereby damaged in the sum of $250. And appellee further alleges that the water so ponded as aforesaid remains, until it is saturated and evaporated, in pools and ponds against the embankment, and in the ditches of appellant's road in pools and ponds, until it becomes stagnant, and covered with poisonous and malarious substances, and caused a great deal of sickness in appellee's family, and that all of the members of his family suffered from sickness thus caused, and that appellant was thereby forced to employ physicians to attend his family, and to buy medicine and to carry them to a more healthful place; that he has been damaged thereby in the sum of $500. Appellee alleges that he cannot give exact dates when the water was brought down and ponded on his property as aforesaid, but it occurred and does occur every time there is a rain, and has so occurred for a

period of more than one year previous to filing this suit, and ever since the road-bed has been so constructed. Appellee alleges that he has on many occasions called appellant's attention to these facts and the way he was being damaged, and it paid no attention, but refused and failed to remedy the matter; and prays for judgment in the several sums above, and for a decree compelling appellant to remedy the defects and remove all obstructions to the flow of said water. Appellant, by first amended original answer, demurred generally and specially, showing that appellee made no allegations of special damages, and gave no basis by which his damages (if any) could be estimated; and further answered by general denial. Tried April 16, 1890, and verdict and judgment for appellee for $1,000.

Appellant's first assignment of error is as follows: The court erred in overruling defendant's exception to plaintiff's petition, made on the ground that plaintiff's petition failed to give any basis for estimating special damages which he claimed; also in refusing to give in charge to the jury defendant's charge No. 6, asked to said effect, and thereby ignoring the rule of law that special damages, in order to be recovered, must be specially pleaded. First proposition under first assignment of error. The assignment contains the proposition, viz.: "Special damages, in order to be recovered, must be specially pleaded." The above proposition states a correct rule with reference to pleading special damages. But it is sufficient to say that the damages, when not special, are subject to other rules that may be applicable to their statement in the pleadings. The question is often troublesome to ascertain what are special damages. We are of the opinion that the damages alleged in the petition in the record are not special, but are damages growing out of the main cause of trespass and nuisance, created or brought about by the acts of appellant in constructing its road-bed without the required and necessary culverts to carry off the

water, and in so constructing the same as to flood appellee's property with the surface water, and cause it to stand thereon. The principal cause of the damage to appellee's property consists in the improper and illegal construction of appellant's road-bed, and failure to make necessary culverts, sluices and ditches to carry off the water that was collected by the natural lay of the appellee's land. This appellant was bound to do. [2 Sayles' Civil St., art. 4171, note 1.] This nuisance and trespass continued for more than one year. As some of the results of the acts and omissions of appellant, the property and land of appellee were virtually taken from him during this time. As consequences of the said wrongful acts of appellant the appellee alleges that he was deprived of his use of the streets from his house to church, town, etc.; also that he was deprived of two acres of his land, and the crops and pasturage, etc., and that his family, consisting of a wife and three children, were made sick continually; that the expense thereby entailed upon him was heavy, etc. These are the results, effects and legitimate consequences of appellant's acts and omissions, and constitute the subordinate causes for damages alleged by appellee. Damages, when direct and consequential, may be alleged in general terms. [Sayles' Civil St., note 28 to art. 1187.] The petition, when viewed as a whole, sufficiently set up the damages relied on. [2 Civil Cas. Ct. App., § 203; Kolb v. Bankhead, 18 Tex. 228; Hoggland v. Cothren, 25 Tex. 345; So Relle v. Telegraph Co., 55 Tex. 308; Railway Co. v. Durrett, 57 Tex. 48.] When, in action for damages, the general statement of the matters from which the alleged injury results is sufficiently specific, all things which are the natural result of the act made the basis for damages can properly be proved. [Railway Co. v. Durrett, 57 Tex. 48. See, also, Railway Co. v. Kane, 2 Civil Cas. Ct. App., § 20.]

§ 220. *Nuisance; damages recoverable for sickness, etc., caused by; insufficient culverts on railroad; flooding*

*premises with water; charge of court.* Appellant's fourth assignment of error is as follows: The court erred in giving in charge to the jury plaintiff's charge asked, to the effect that plaintiff, if entitled to recover of defendant, could recover both for sickness of his family and expenses incurred thereby, and virtually charging the jury that plaintiff might, in the case, recover of defendant not only the expenses incurred by him by reason of the sickness of his family, but, in addition, for the sickness of his family, viz., the physical pain and mental anguish by them endured. Also in refusing to give defendant's charge, asked in subdivision 2 thereof, correcting said erroneous charge on said subject. The court charged the jury that if plaintiff had sustained damages, as alleged in his petition, of sickness to his family, resulting from the flooding or ponding of water by the defendant on the premises of the plaintiff, then and in that state of the case, "if the jury are satisfied from the evidence, the plaintiff would be entitled to recover such amount of damages of the defendant company as may have been proved by plaintiff (if any) on this phase of the case." This is complained of and under the above-quoted assignment of error. The proposition urged by appellant under this assignment of error is thus stated: "The appellee (party complaining) cannot recover for mental or physical sufferings of his children." This does not meet the question involved in the charge. The point raised by the charge is, can the appellee recover the damages he sustained by reason of sickness in his family? Plaintiff alleged his damage for medical bills, and paid out on account of the sickness caused by the acts and omissions of appellant, at $500. This, if true, he would be entitled to recover as damages. This court quotes Wood on Nuisances, and says: "If the act of the defendant contributes essentially to the creation of the nuisance, as by the erection of a dam, which renders the water stagnant, or produces its overflow, so as to cause it to gather in

pools or eddies, and become stagnant, or by raising it, so as to cause the decay of vegetable matter upon its banks, whereby unwholesome gases are developed, he is liable, even though natural causes combine with his act to produce the injury." [2 Civil Cas. Ct. App., § 142; Wood, Nuis., § 830.] Our statute provides that "in no case shall any railroad company construct a road-bed without first constructing the necessary culverts or sluices as the natural lay of the land requires for the necessary drainage thereof." [R. S., art. 4171.] Our supreme court, as well as this court, have in repeated decisions held that if the railway company fails to construct proper culverts, sluices or ditches necessary to pass off the surface water by the way it flowed before the railway was built, it is responsible for the damage incurred from such neglect. For collation of authorities, see 2 Sayles' Civil St., art. 4171, and note 1 thereto. The supreme court of Connecticut says: "A man may recover not only for injuries done to himself by a nuisance, but for those done to his family. Whether the annoyance or injury were real or feigned was for the jury to determine, as in all other cases of suffering and complaint." [Kearney v. Farrell, 28 Conn. 320.] "Nuisances in one's dwelling are all acts done by another from without which render life within the house uncomfortable, whether it be by infecting the air with noisome smells or with gases injurious to health." [Ellis v. Railroad Co., 63 Mo. 135.] In the above-cited case the defendant company killed, by its own locomotive, a horse, and left it on the side of the track so near the house occupied by plaintiff and her husband as to render occupancy unwholesome, and in doing so it was held that a nuisance was created. The court say that, "had the husband brought this suit, it could have been maintained, and on the trial he would have been permitted not only to show the sickness of himself, but also the sickness of his wife, his family, and the different members thereof, as a measure for the re-

covery of damages." In Story v. Hammond the plaintiff alleged that a dam by overflowing the adjacent lands rendered the atmosphere exceedingly impure and unhealthy, and thereby occasioned the sickness of his family, as well as himself; and that he was put to great cost and charges in and about curing himself and his wife and children, and that he and his wife had sustained a loss of time, etc. The jury gave him a verdict.

Defendant moved for a new trial — *First*, because the court permitted plaintiff to give evidence not only of his own sickness, but the sickness of his family, and the different members thereof, etc.; and, *secondly*, because the court charged the jury that plaintiff's action was sustainable under the law. [4 Ohio St. 376.] The supreme court affirmed the lower court's action in overruling said motion for a new trial.

Without quoting further from authorities, we are of the opinion that the court did not err in charging the jury that appellee was entitled to his damages against appellant on account of the sickness produced by reason of the acts, etc., of appellant. The court further charged the jury that if they found "from the facts and circumstances in evidence in the case that plaintiff's land was flooded and ponded as alleged, and that the result and effect of said flooding and ponding was to cause sickness in plaintiff's family, then in such case he would be entitled to recover therefor whatever amount the evidence shows he is entitled to." Appellee was entitled to recover damages for the sickness, medical expenses, etc., as alleged. Telegraph Co. v. Cooper, 71 Tex. 512, relied on by appellant, is not in point, and has no application to the question raised here. The verdict is supported by the evidence. Where there is a conflict of evidence, the weight to be attached thereto, as well as the credibility of the witnesses, are matters relegated to the jury, and we see no reason for disturbing their finding in this case.

February 18, 1891.        Affirmed.