St. Louis Southwestern Railway Company of Texas v. J. K. Hall.

No. 1400. Decided March 16, 1905.

**1.—Practice in Supreme Court—Jurisdictional Question.**

A question as to the lawful creation and existence of the trial court, since it affects appellate jurisdiction, may be raised in a case pending in the Supreme Court on writ of error, though not brought to the attention of either the trial or the appellate court. (P. 484.)

**2.—Constitutional Law—District Court—Limiting Powers.**

The restriction, in a statute creating a district court, of the powers conferred by the Constitution on such tribunals, such as taking cognizance of criminal proceed'ngs or impaneling grand or petit juries, being void, does not effect a repeal of the general statutes regulating such proceedings, as applied to such court, nor render the law creating such court void for unconstitutionality. Lytle v. Halff, 75 Texas, 128, followed. (Pp. 484, 485.)

**3.—Same—Terms of Court.**

The requirement that the district judge "hold the regular terms of his court at the county seat of each county in his district at least twice in each year (Const., art. 4, sec. 1), is an affirmative command, and not a prohibition to the Legislature, and a law creating a court but providing for but one term

annually in the county can not be pronounced void by the courts because only a partial compliance with the Constitution.  (Pp. 485-487.)

**4.—Same.**

It is questioned whether the constitutional provision requiring two terms of the district court to be held annually in each county applies to the case of a second court created to sit in a county already having such court holding two terms each year.  (P. 487.)

**5.—Negligence—Request for Specific Charge.**

The defendant was entitled, on request, to an affirmative charge on his right to a verdict if negligence on his part was not shown, where the charge given, though authorizing a verdict for plaintiff only on proof of defendant's negligence, only directed the return of one for defendant on proof of plaintiff's contributory negligence.  (Pp. 487-489.)

**6.—Same—Contributory Negligence.**

Where defendant's plea alleged various acts and omissions of plaintiff as constituting contributory negligence, a submission of defendant's right to a verdict on that issue on proof of all the enumerated acts or omissions is not sufficient to justify a refusal of a requested charge to find in his favor on proof of certain specific facts constituting such a defense but not embracing all the facts so pleaded.  (Pp. 489, 490.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Hunt County.

Hall sued the railway company and had judgment, from which defendant appealed and on affirmance obtained writ of error.

*E. B. Perkins, Templeton, Crosby & Dinsmore,* and *A. H. Culwell,* for plaintiff in error.—There was but one purpose in the act of the Legislature creating the Sixty-second Judicial District, and that was to create a judicial district of the counties of Hunt, Delta and Lamar, and in creating this district it provided for only one term of court in the county of Delta and provided that the District Court of this district should not have power to impanel a grand jury and should not take cognizance or jurisdiction of any criminal matter except writ of habeas corpus, and should not have power to summon or impanel any jury in any cause in Delta County, which provisions rendered the act void. Acts 28th Leg., chap. 55, p. 75; Constitution, art. 5, secs. 7, 8, 10, 13; Texas & P. Ry. Co. v. Mahaffy, 98 Texas, —; Cooley's Const. Lim., 7 ed., 247; Trade Mark Cases, 100 U. S., 82; United States v. Reese, 92 U. S., 214; Sprague v. Thompson, 118 U. S., 90; Poindexter v. Greenhow, 114 U. S., 270; Western U. Tel. Co. v. State, 62 Texas, 636; Whitener v. Belknap, 89 Texas, 273; State v. Pugh, 43 Ohio St., 98; Norton v. Shelby County, 118 U. S., 442; Gulf C. & S. F. Ry. Co. v. Martin, 12 Texas Ct. Rep., 519.

In order to establish contributory negligence the defendant was only required to show that the plaintiff did or omitted to do any one or more of the things charged against him in defendant's answer, provided the jury found that the same constituted negligence, and was not required to prove all of the things charged against the plaintiff in its answer before the jury could find that the plaintiff was negligent.

The right of the plaintiff and the defendant to the use of the crossing

were equal, and the defendant had a right to operate its engine up to and over the crossing, even if the plaintiff was using the crossing, provided the engine was so operated as not to strike the plaintiff's wagon or team, and as not to unnecessarily alarm or frighten plaintiff's team.— Continental Imp. Co. v. Stead, 95 U. S., 161; Morgan v. Railway Co.; 3 S. E. Rep., 506.

*Evans & Elder, Robt. E. Spearman, Hale, Allen & Dohoney, Looney & Clark, C. E. Meade, Jones & Conner, T. D. Starke, J. S. Sherrell* and *Gales and Carpenter,* for defendant in error.—Where a part of a legislative act is unconstitutional, but the "leading purpose" of the act may be accomplished after striking out such void part, the remainder of the act will stand.    Lytle v. Halff, 75 Texas, 130.

It is apparent from said act that had the Legislature been put to the alternative of passing the act without providing terms of court in Delta County and without limiting the jurisdiction and powers of the district judge in said county, or of passing no act at all, that it would have passed the act without these provisions.

Where a power is left by the Constitution to be exercised by the Legislature (or even if that duty be imposed on the Legislature) upon a subject, no power exists in any other department to compel the Legislature to exercise such power; and if it sees fit to legislate in part upon such subject, no power exists to compel it to exhaust its power thereon.    If the court had authority to declare null that part which had been done until the Legislature should complete what the courts might deem to be its full constitutional duty, it would be indirectly compelling a legislative discharge of duty by the court, which it could not do directly.    To do so would destroy the independence of a co-ordinate department of government.

An act of the Legislature which creates an office and provides for an officer to discharge its duties must have the force of law until set aside as unconstitutional by the courts, and an officer acting under color of such law is a de facto officer.    State v. Carroll (Conn.), 9 Am. Rep., 409-429; Parker v. State ex rel. Powell (Ind.), 18 Law. Rep. Ann., 575.

The authority of a de facto officer can only be questioned by the State by quo warranto.    City of El Paso v. Ruckman, 92 Texas, 88; Eustice v. City of Henrietta, 37 S. W. Rep., 635.

(By *Hale, Allen & Dohoney.*)—The parts of the law called in question by plaintiff in error, providing for only one term of court in Delta County for each year, and that the court shall not impanel a jury in any case, do not violate the provisions of the Constitution referred to, because Delta County was already embraced in the Eighth Judicial District, and the act gives the courts of the Eighth and Sixty-second Districts concurrent jurisdiction throughout the limits of Delta County, in all civil matters of which jurisdiction is given district courts by the Constitution and laws of Texas, and between them are required to

hold three terms of court each year, and provision is made for jury trials in cases where juries are demanded. Lytle v. Halff, 75 Texas, 134.

If the provisions with reference to Delta County referred to are in conflict with the Constitution, they are not so inseparably connected with the other portions of the act as to render the whole void. Constitution of Texas, art. 5, sec. 7, as amended in 1891; Gen. Laws 28th Leg. (1903), chap. 55, p. 75; Lytle v. Halff & Bro., 75 Texas, p. 132; Texas & P. Ry. Co. v. Mahaffey, 84 S. W. Rep., 646; Orr v. Rhine, 45 Texas, 354; State v. De Gress, 72 Texas, 246, 247; People v. Bull, 46 N. Y., 57; Bank of Hamilton v. Dudley, 27 U. S., 526; Berry v. Railway Co., 20 Am. Rep., 74; Cooley's Con. Lim., 6 ed., pp. 209-216; Cooley's Prin. Con. Law, 171.

If the act of the Legislature creating the Sixty-second Judicial District is unconstitutional for the reasons suggested by plaintiff in error, then the judgment appealed from is a valid and binding judgment of a court de facto, and a district court of this State, even if defectively and illegally organized, and its judgments are valid and binding as to the public and third parties until it is decided that it is illegal and no court, in a direct proceeding by the State for that purpose; and plaintiff in error has no right to raise the question as to the validity and existence of said court in this cause. Constitution, art. 5, secs. 1, 7; Rev. Stats. of Texas, title 93; Whitener v. Belknap, 89 Texas, 278; State v. Dunson, 71 Texas, 66; Daniel v. Hutcheson, 86 Texas, 51; Cox v. Railway Co., 68 Texas, 226; City of El Paso v. Ruckman, 92 Texas, 88; Eustis v. City of Henrietta, 37 S. W. Rep., 635; Norton v. Shelby County, 118 U. S., 425; Tulare Irrigation Dist. v. Shepard, 185 U. S., 13; Ex parte Henry Ward, 173 U. S., 452; McDowell v. United States, 159 U. S., 596; State v. Carroll, 9 Am. Rep., 427; Brown v. O'Connell, 4 Am. Rep., 89; Mallett v. Uncle Sam Mining Co., 90 Am. Dec., 486-8; Vanfleet's Collateral Attack, secs. 20, 21, 22.

(From brief in appellate court by *Evans & Elder* and *Robt. F. Spearman.*)—A charge which submits the issues raised by the pleadings which are supported by testimony, is correct. That part of the main charge which submitted plaintiff's theory of the case is in the language of plaintiff's petition, and charges the jury that they must believe that the plaintiff was in the exercise of ordinary care while in the act of crossing defendant's track, and that the agents and servants of defendant were guilty of negligence in the operation of the engine. Texas & P. Ry. Co. v. Bryant, 8 Texas Civ. App., 134.

The court did not err in refusing special charges 1, 2 and 4, because the issue sought to be submitted by them in different forms was presented in the main charge. Texas & P. Ry. Co. v. Bryant, 8 Texas Civ. App., 134; Texas Mex. Rv. Co. v. Douglass, 73 Texas, 325; Gulf C. & S. F. Ry. Co. v. Locker, 78 Texas, 279.

WILLIAMS, ASSOCIATE JUSTICE.—The defendant in error, who was plaintiff, brought this suit in the District Court of the Sixty-second District, in Hunt County, to recover damages for personal injuries which he alleges were caused by the negligence of the servants of the plaintiff in error, the defendant below, in frightening and causing his horses to run away and throw him from the wagon to which they were hitched and which he was driving. He recovered judgment, which was affirmed by the Court of Civil Appeals and which has been brought before this court by writ of error. After the cause was submitted in this court, a decision was rendered by the Court of Civil Appeals for the Fifth District holding that the act of the Twenty-eighth Legislature, organizing the Sixty-second Judicial District, was unconstitutional, in toto; that the court thereby provided for never had a legal existence and that proceedings before and judgments rendered by it were void. The submission of this cause was then set aside upon agreement of the parties in order that the question as to the constitutionality of the statute might be argued and finally decided by this court. The question had in no way been brought to the attention of the trial court, the Court of Civil Appeals or this court, but, as it is one which affects the jurisdiction of this court over the cause, it may be raised and decided at any stage of the proceeding.

Prior to the passage of the act in question, Lamar County was in the Sixth and Hunt and Delta counties were in the Eighth Judicial District, and each of these counties had two terms of court each year. This arrangement was not disturbed by the Twenty-eighth Legislature further than appears from the statement hereafter given of the provisions of the statute passed by it. The counties remained, as before, parts of the Sixth and Eighth districts, respectively, and each was allowed two terms of court to be held by the judge of the proper district. The statute under consideration attempted to create a new district composed of these counties and to provide for a new district court for that district in addition to those already existing. It provided for the holding of two terms of court a year by the judge of the new district in each of the counties, except Delta, in which the time for holding only one term was fixed. It provided that the new court, throughout the counties of Hunt and Lamar, should have concurrent jurisdiction, as given by the constitution and laws, with the courts already existing, but that the judge of the Sixty-second District should never impanel a grand jury in those counties "unless in his judgment he thinks it necessary." With respect to Delta County, the act provided for the same concurrence of jurisdiction in the two courts, except that it attempted to deny to the court of the new district the power to impanel grand juries, to take jurisdiction of any criminal matter, except for a writ of habeas corpus, and to impanel juries to try causes, in connection with which provision was made for the transfer to the other court of all causes in which juries should be demanded. Provision was also made applicable to all the counties for the transfer of causes by the judge of one of the courts to the other. The act also pro-

vided that the incumbent clerks of the district courts of the several counties and their successors should perform the duties pertaining to the clerkship of both courts of their respective counties.

It is settled by the decision of this court in Lytle v. Halff, 75 Texas, 128, that, consistently with the Constitution, there may be more than one district court in a county; or, to express it differently, that a county may constitute a part of more than one judicial district. This proposition is not questioned by counsel. It was also strongly intimated in that case that a provision prohibiting a district court from impaneling grand juries was unconstitutional as denying to that court a portion of the jurisdiction given to it by the Constitution over criminal causes, inasmuch as such jurisdiction over felonies could not be constitutionally exercised without the aid of grand juries. To this proposition we fully assent. It was, however, further held, in the case cited, that this feature of the statute there in question did not affect the legality of the court established, but that, if it were in conflict with the Constitution, it would have to give way and leave the court in the full possession of its constitutional functions. The same reasoning disposes of most of the provisions of this statute which are attacked as unconstitutional. If the Legislature did enough to bring into active existence a district court, it was at once clothed with the powers conferred by the Constitution upon such courts, and any attempts in the act to unduly limit those powers must be treated as futile. From this it follows that the provisions forbidding the court from taking cognizance of criminal matters and from impaneling juries in Delta County are as ineffectual to diminish the jurisdiction of this court, if it came into existence, as is the provision concerning grand juries. The Constitution defines the civil and criminal jurisdiction of all the district courts and contains provisions under which the full exercise thereof would be impossible without the aid of petit juries; and, hence, to deprive any such court of the power to impanel juries would be to deprive it of an instrumentality essential to the exercise of its jurisdiction. As was said in Lytle v. Halff, such a provision, being unconstitutional, can not operate to repeal or supersede existing laws providing procedure through which this jurisdiction may be exercised. It is plain, therefore, that these provisions can not, consistently with the holding in Lytle v. Halff, be allowed to affect the validity of the statute, as a whole, or the legality of the court.

The provision most relied on is that fixing a time for the holding of only one term of the court in Delta County, which is assailed as being in conflict with section 7, article 4, of the Constitution. That section provides for the division of the State into districts; and for the selection of a judge, whose qualifications and salary are fixed, and who is required to "hold the regular terms of his court at the county seat of each county in his district at least twice in each year in such manner as may be prescribed by law." It also empowers the Legislature to provide for

the holding of more than two regular terms per year and of special terms.

Much that is essential to the existence of the courts is thus prescribed by the Constitution itself, while some of the things needed to bring them into active operation are to be provided by the Legislature. The districts must be formed and the times for holding the courts prescribed by legislation, and without these there is no court authorized to exercise the jurisdiction defined by the Constitution. The contention here is that, although the Legislature has defined the territory to compose the district and has fixed times for holding the court twice a year in two of the counties and once a year in the third, it has not done enough to authorize the appointment of a judge and the holding of court, because of the omission to provide for a second term in each year in the third county. To us this contention seems to mistake the nature of the provision for two terms, by treating it as an inhibition of any provision for one term. As terms of courts can not be held until times are prescribed by law, it is plainly the duty of the Legislature to make such provision. But this is an affirmative command and not a prohibitory provision. The courts have no power to enforce the performance of this duty in whole, and, in our judgment, have as little right to strike down, as unauthorized, a performance of it in part, merely because the Legislature has not gone as far as the Constitution may require. When the Legislature has provided for one term in a county, it has not done a thing prohibited or unauthorized by the Constitution, but has done a part of that which the Constitution commands it to do. If there had been no judicial districts when the Constitution was adopted and the Legislature, in forming them, had provided for only one term of court in each county in the State, can it be true that the people would have been deprived of courts because the provision made stopped short of that intended by the Constitution? If the Legislature, in session in January, should form a new district or add a county to an existing district and provide for a term of court in March, and, after that had been held, the Legislature, being still in session, should further provide for another term in the same county in Spetember, we suppose no one would say that the courts could not legally be held under this authority or that its proceedings would be void. Yet to that proposition we would inevitably be led by adopting the contention that to the construction of a valid district and a lawful court antecedent provision for two terms a year in each county of the district is essential. If the Legislature, in forming a district, by oversight fails to provide for one of the regular terms in one of the counties, or, in attempting to so provide, employs such uncertain language that the time can not be legally ascertained, would it not be unreasonable in the extreme to hold that the whole act, the court, and all of its proceedings are to be treated as if they had never been? We can not yield our assent to a doctrine leading to such consequences. In our opinion, provision made by the Legislature for one term of a court a year is within the authority con-

ferred and is a partial performance of the duty imposed by the Constitution; and, if it be true that this is not the full measure of such duty, that does not authorize the courts to say that it is not within the authority. The decision in Whitener v. Belknap, 89 Texas, 273, does not at all militate against this conclusion. It only applied the well recognized rule that a court can only be held at the place fixed by law for its sessions, which place is fixed by the Constitution at the county seat.

We are not to be understood, however, as holding even that the Constitution makes it the duty of the Legislature to provide for two terms for every district court put into operation in a county. It is at least questionable whether or not the provision in the Constitution for two terms had any other purpose than to secure to the people of a county at least that number of terms. Such is the view expressed by Judge Stayton in Lytle v. Halff. As shown by him in that opinion, while the framers of the Constitution may not have thought of more than one court in a county, yet they did not prohibit the Legislature from establishing more than one court; and the requirement of two terms of the one court provided by the Constitution may not apply to other courts in a county provided for by the Legislature. And, hence, it may be that where there are two courts in a county, one of which holds two terms in a year, the requirement is met.

We are of the opinion that the statute organizing the court a quo is constitutional in its provisions establishing the court in all of the three counties and that the court had jurisdiction to try this cause and render the judgment appealed from, which makes it necessary that we consider the grounds urged in support of the writ of error.

Plaintiff's version of the occurrence in which he was hurt is that, with his wagon and team, he was going south on a street in Wolfe City, sitting upon some seed cotton with which the wagon was loaded; that, as he approached a point where several railroad tracks crossed the street, an engine passed along one of them from the east and stopped a short distance west of the crossing; that, before trying to cross the track, he stopped for some moments and saw that the engine was stationary and that three men upon it were looking toward him and apparently saw him. Seeing nothing to indicate that the engine would move, he started to cross, and as he was nearly upon the track the employes upon the engine caused it to move, or, as he expressed it, to dash forward with the bell ringing and moving so rapidly as almost to strike his wagon, frightening his horses and causing them to run and overturn the wagon and hurt him. The evidence of those with the engine tends to show that it was seventy or eighty feet from the crossing when plaintiff crossed, that the wagon had cleared the track before they approached it, and that they ran at a moderate speed, with no reason to suppose there was any danger to the plaintiff. The evidence of these witnesses is given with reference to different points and objects about the locality, of which we can know nothing, in such way that it is impossible to understand it in its en-

tirety, but as much as we have just stated may be said of it. The defendant also introduced evidence that plaintiff said at the scene of the accident, in answer to a question as to how his team came to run away, "that they got scared and his lines were down and before he could get them up they (the team) ran on an embankment."

The court in its general charge instructed, in substance, that, if the servants of the defendant were guilty of the negligence alleged by plaintiff (particularizing it), and this was the proximate cause of the injury to plaintiff, the jury should find for him unless they should find for defendant "under the instructions hereinafter given." The only instruction given affirmatively authorizing a verdict for defendant was the following:

"If you further find from the evidence that plaintiff at said time and place passed over said railway in a careless, indifferent or negligent manner; or if you find from the evidence that at said time plaintiff did not have his team under control, and made no effort to keep or hold his team under control, but at the time of crossing said railway permitted the lines to hang loose, or swing loose and hang down almost to the ground, and that the lines were in such position when plaintiff's team ran away; and if you find that the plaintiff was thereby guilty of negligence as that term is hereinbefore defined and that such negligence, if any, caused or contributed to his injury, you will find for the defendant."

Upon the issue of defendant's negligence its counsel requested the following instruction:

"Railway companies have a legal right to run their trains and engines over their roads and over public crossings, and they are liable to other persons for such damages only as result from their negligence or disregard of the rights or safety of such other persons. If you believe from the evidence that at the time plaintiff drove his team over defendant's railroad the engine was sixty or more feet away from said public crossing and was moving at a moderate rate of speed so that plaintiff had ample time to take his wagon and team over the said railway before the said engine would reach the crossing, and if you believe defendant's servants operating the said train at the time acted as men of ordinary prudence would have acted under the circumstances, then in that event plaintiff can not recover damages in this suit, and you will find for the defendant."

As we have stated, there was no instruction given affirmatively calling to the attention of the jury any view of the facts which would acquit the defendant of liability, except that upon the subject of contributory negligence. That a party is entitled, when he requests it by correct instructions, to have the facts establishing his cause of action or ground of defense, with the law applicable to them, affirmatively stated by the court to the jury, is the settled rule of practice established by many decisions of this court. Texas T. Ry. Co. v. Ayres, 83 Texas, 269; Missouri K. & T. Ry. Co. v. McGlamory, 89 Texas, 639. It is no answer to a complaint

that this was not done that the jury might, negatively, have inferred the proposition expressed in the request, from the instructions stating the case of the opposite party. The right is, upon proper request, to have the law plainly and affirmatively stated in its application to facts supported by evidence under which the party would be entitled to a verdict. The instruction in question was applicable to a view of the evidence which the jury might have taken, and the rule on the subject required that it be given if it truly stated the law. We are unable to see wherein it is incorrect. It refers, it is true, to particular facts, but submits to the jury whether or not those facts existed and constituted negligence on the part of the defendant. It has no reference to the question of negligence on the part of plaintiff, and lays down no rule on that subject, but merely seeks an appropriate instruction on the question of defendant's negligence.

The defendant also requested several special instructions on the subject of contributory negligence, all of which appear to be correct, and one of which should have been given. It is as follows:

"You are further instructed that if you believe from the evidence that plaintiff drove his team over defendant's railway at the time and place alleged in the petition, and further believe that at the time and after crossing said railway plaintiff permitted his lines to hang loose in such manner that he had no control of his team, and if you further believe from the evidence that the act of plaintiff in so driving his team over the said railroad at that time and place and under the circumstances surrounding plaintiff caused or contributed to plaintiff's injuries, and if you further believe from the evidence that a man of ordinary prudence would not, under the circumstances then surrounding plaintiff, have driven his team over said railroad with the lines hanging loose, then in that event plaintiff is not entitled to recover in this suit, and you will find for the defendant."

The evidence tended only to prove with reference to the handling of the lines that they were hanging down, and the requested instruction sought only to have the question, whether or not plaintiff was negligent in driving at such a place with his lines in that condition, plainly and pointedly submitted to the jury. The defendant was entitled to have this done. The general charge upon this phase of the evidence required the jury to find, before they could pronounce the plaintiff guilty of negligence in this particular, (1) that he did not have his team under control; (2) that he made no effort to control his team; (3) that he permitted his lines to hang or swing loose and hang almost to the ground; and (4) that the lines were in such position when plaintiff's team ran away. The differences between the two charges are too obvious to need comment. The general charge required proof of a state of facts which no evidence in the case would have authorized the jury to find, while that requested related to evidence before them.

It is true that the charge given is in the exact language of defendant's

plea of contributory negligence, but this does not cure the error in re-fusing the special charge. . That defendant did not prove all it alleged did not deprive it of the right to have its evidence, which was admissible under its plea, submitted to the jury. Gulf C. & S. F. Ry. Co. v. Mang-ham, 95 Texas, 413.

The charge of the court submits to the jury, in a general way, whether or not plaintiff passed over the crossing in a careless, indifferent or negli-gent manner, but this was not sufficiently specific to deprive the defend-ant of the right to have the particular question raised by the evidence called to the attention of the jury when it made its request in a legal way.

The second and fourth requested instructions are so like the first, al-though differing from it in some particulars, that it would hardly have been proper for the court to give more than one of them.

For the errors indicated the judgment will be reversed and the cause remanded.

*Reversed and remanded.*