### OLIVAS et ux. v. EL PASO ELECTRIC CO.
### No. 2532.

Court of Civil Appeals of Texas. El Paso.
April 16, 1931.

Rehearing Denied May 7, 1931.

J. A. Gillett, S. P. Weisiger, and W. O. Hamilton, all of El Paso, for appellants.

Hunter, Brown & Brooke, of El Paso, for appellee.

HIGGINS, J.

The appellants, Olivas and wife, appeal from an order sustaining exceptions, general and special, to their petition, and dismissal of their suit upon refusal to amend.

Omitting its formal parts, the petition reads:

"2. That said defendant Corporation was organized for the purposes, and was at all times hereinafter mentioned and is engaged in the manufacture and sale for profit, of electric current and electricity for both lighting and power purposes.

"3. That defendant corporation, at all times herein mentioned, maintained, owned and operated lines of poles and wires for the purpose of conducting and transmitting electricity and electric currents from their main station in the City of El Paso, Texas, and their sub-stations in the Rio Grande valley, to many points southeasterly from said city down, and along said valley and along the public highway to a point easterly from the village of Tornillo, and on into Hudspeth County.

"4. That said line of poles and wires and the equipment connected therewith constitute a complete system for the purposes aforesaid; and the same belong to and were at all times herein mentioned, owned and operated by defendant.

"5. That said electric line at all said times was and is charged with and carries currents of electricity of a high and dangerous voltage and power, capable of inflicting serious bodily injury and death to any human being who might come in contact therewith.

"6. That heretofore, prior to and on the 16th day of May, 1929, defendant had constructed, and maintained and operated a branch electric line, extending from its main line along the aforesaid highway several hundred yards to a farm leased and controlled by W. D. Malone, and known as the Melton place.

"7. That said branch line was built, owned and maintained by defendant solely for the purpose of furnishing electric lights for a dwelling on said Melton place.

"8. That plaintiffs and their son, Jose Olivas, now deceased, who was an employee of and foreman for said W. D. Malone, occupied said dwelling on the Melton place, to which said branch electric line had been built by defendant, having a legal right and authority to occupy the same, and were living therein prior to and on the 16th day of May, 1929.

"9. That the electric feed or service wires on said branch line extended from the main line of defendant on the said public highway to and into said house so occupied by plaintiffs and their family including the said Jose Olivas, now deceased.

"10. That on one of the poles of said branch line, located on said Melton place and near said residence, a wire extended from a cross-arm near the top thereof to a metal stake or stob driven into the ground near the foot of said pole, which wire was intended as and was called a ground wire. The said wire was attached to the top of said metal stake or stob

about four inches, more or less, above the ground.

"11. That said ground wire was bare, exposed and uninsulated for a space of several inches just above the top of said metal stob to which it had been and was attached.

"12. That prior, up to and on the 16th day of May, 1929, said electric wires on the main line along the public highway as well as on said branch line extending to and into said dwelling, and the said ground wire, were all charged with and carried a very high, dangerous and deadly current and load of electricity of sufficient voltage and power to kill any human being who might come in contact with it.

"13. That on or about the 16th day of March, 1929, the use of electric light in said dwelling where plaintiffs resided, was discontinued, and the electric meter was removed therefrom by defendant; but the wires running into said house were not removed and were left in such condition that the current of electricity continued to be carried and passed into said house after said meter had been removed. And at various times thereafter electricity flashed and darted from the ends of said detached and exposed wires in the said house, which caused plaintiffs great anxiety and fear lest they or some member of their family might be killed or injured, or their property destroyed by said electric current; and by reason thereof plaintiffs nerves were unstrung and they suffered great mental strain, and the quiet and peaceable possession and occupancy of their home was so disturbed that they lived in constant dread and apprehension for fear that some dire calamity might befall them.

"14. That when the use of electric light in the said dwelling had been discontinued, the current of electricity was not cut off by defendant at the main line on the highway, as it could and should have been; but the wires were allowed to remain connected there, and a current of electricity of high and dangerous voltage, capable of inflicting great bodily injury and death to human beings, continued to be conveyed to and over said private premises, for a distance of several hundred yards, to and into said house.

"15. That said branch line and said current of electricity so maintained and continued thereon by defendant, after the use of light in said house had been abandoned and discontinued, was wholly unnecessary and without legal excuse, as plaintiffs were the only patrons on said line.

"16. That said branch line to and across the premises occupied by plaintiffs, so constructed and maintained by defendant, was never at any time inspected and examined by it to determine whether said line had gotten out of repair and was in a safe condition.

"17. That the pole hereinabove mentioned, on and from the top of which the aforesaid ground wire extended to the metal stake or stob, driven in the ground, was standing in close proximity to and almost against a wire fence made of barbed wire and hog and chicken proof wire netting, which ran along the bank of an irrigation ditch, the banks of which were at all times and especially on the 16th day of May, 1929, moist and wet.

"18. That said line of wire fencing and said electric line ran close to a stock corral or pen, between said house and fence, where stock were kept and fed; and around and about which there was constantly thrown and scattered discarded pieces of bailing wire from the hay and alfalfa feed to said stock.

"19. That said branch electric line, poles and wires were wrongfully maintained by defendant in said conditions, in and at a place and location about and where it was necessary for persons to work and pass over, around and across, in the daily performance of their regular duties on said premises and farm; and where it was particularly necessary for the said Jose Olivas, now deceased, to go, pass and be in the performance of his duties to his employer on said farm.

"20. That all said conditions were dangerous and were made so by the wrongful acts of defendant in maintaining said branch line so charged with dangerous currents of electricity upon the premises of plaintiffs, when there was no occasion for it, and were fully known to defendant, its servants and employees, and by the use of ordinary care could and would have been known to it and them.

"21. That the maintenance of said branch line from the main line along the highway to, over and across the Melton place to the residence of plaintiffs, a distance of several hundred yards, together with the so-called ground wire kept and maintained in the condition herebefore stated, a part of said ground wire in close proximity to the aforesaid wire fence being bare, exposed and uninsulated for a space of several inches above the point where it has been attached to the aforesaid metal bolt driven into the ground, and charged with a deadly and dangerous current of electricity, which was wholly unnecessary and wrongful and not in use, constituted a private nuisance, extremely dangerous and threatening to life and limb of any person whose duty it was or might be to work around and be about the same.

"22. That as hereinabove stated there was around and about the said premises pieces of baling wire off hay and alfalfa, portions of which came in contact with the bare, exposed and uninsulated part of the said ground wire and stob and the metal thereof and the said wire fence which ran between the Melton place and the Stahman place; whereby the said fence became and was charged with a

deadly and dangerous current of electricity, at the time hereinafter mentioned.

"23. That about 6:00 P. M., on the 16th day of May, 1929, it became necessary for the said Jose Olivas to cross the said division fence, and when he touched and came in contact with it, he was knocked down and back by the force of electricity thereon, on and upon the said baling and fence wire; and by reason of the strength and force of said electric current and the force with which he was knocked down, he was unable to release or extricate himself from said wire and fencing, or to remove himself therefrom, and he remained in that condititon for ten minutes or more.

"24. That by reason of coming in contact with the fence and wires aforesaid, charged as they were with a high voltage of electricity, the said Jose Olivas was so seriously injured and burned that he died from the effects thereof about one week later.

"25. That the action of the defendant in maintaining said branch electirc line in the manner and under the conditions aforesaid constituted a private nuisance on, over and across said Melton place, and at and in close proximity to where it was necessary for the said Jose Olivas to be and pass to and from in the usual and daily performance of the duties required of him on said premises; and same was the proximate cause of his injuries and death to plaintiffs' damages as hereinafter alleged.

"26. That the said Jose Olivas was the son of plaintiffs, at the time of his death was slightly less than twenty-one years of age, and had never married, or had any children; and that his mother was fifty-eight years old and his father sixty years old.

"27. That the said Jose Olivas was an energetic, intelligent, industrious, law-abiding and dutiful son, and had assisted, maintained and supported his parents for several years prior to his death; and had he lived, he would have assisted, maintained and supported them for fifteen and more years to come.

"28. That the said Jose Olivas, at the date of his death was earning $40.00 a month, besides his fuel, house and water for himself and parents; and had he lived, his income would have increased with age and experience, and his contributions to the maintenance and support of his parents would have increased.

"29. That plaintiffs expended the sum of $156.75 for medicines, and the funeral expenses of their said son, and the same were necessary and reasonable; and defendant has failed and refused to pay the same or any part thereof, though requested so to do, to plaintiff's damage in the sum of $156.75.

"30. That the aforesaid acts of defendant, its servants and employees, in maintaining said branch electric line upon and across the premises of plaintiffs, in the manner and conditions aforesaid, constituted the maintenance of a private nuisance, which proximately cause the said injuries to and death of the said Olivas, and the loss to plaintiffs of their son, and the maintenance and support which they would have received from him; as well as the injury they sustained in mind and body by the unwarranted invasion of the quiet and peaceable occupancy of their home by defendant, in the manner hereinabove set out. That all said acts of defendant have caused these plaintiffs damages in the sum of $25,000.00, which defendant has failed and refused and still fails and refuses to pay, to plaintiffs' loss and damage in the total sum of $25,156.75.

"Wherefore, plaintiffs pray that defendant be cited to appear and answer herein and that upon final hearing hereof, they have judgment against defendant for said sum of $25,156.75, together with all costs in this behalf incurred, and for all such other relief, general and special, as they may be entitled to under the facts herein."

■ As against the general demurrer, the petition stated a cause of action for damages for the maintenance of a private nuisance as well as for damages for the death of plaintiffs' son under the death by wrongful act statute. Article 4671, R. S.

■■ The allegations show a condition created by the acts of defendant which disturbs plaintiffs in the peaceable possession and occupancy of their home, causing constant dread and apprehension, a condition which in fact is dangerous and has already caused the death of one member of the family. A condition of this kind is plainly a nuisance (City of Dallas v. Early [Tex. Civ. App.] 281 S. W. 883; 20 R. C. L. 380), and for the resulting damages the defendant is liable. The general allegation of damages contained in the last section of the petition is sufficient to admit proof and support a recovery of the damages which naturally and necessarily result from the nuisance complained of. Texas & P. Ry. Co. v. Curry, 64 Tex. 85; San Antonio & A. Ry. Co. v. Gwynn (Tex. App.) 15 S. W. 509, 510.

■ Upon this phase of the case the issue of negligence is immaterial (46 C. J. 663; 20 R. C. L. p. 381 § 3), though as a matter of fact, as later shown, the petition shows that the nuisance complained of is the consequence of the defendant's negligence.

We pass now to consideration of the petition as stating a cause of action for the death of plaintiff's son.

■ The generation, transmission, and distribution of electricity is a practical necessity. The business of generating, transmitting, and distributing the same is authorized

and lawful. High-voltage currents of electricity are very dangerous agencies, but, by the exercise of the proper degree of care in the transmission and distribution of the current, its dangerous character is practically eliminated. Failure to exercise such care is, of course, negligence. The petition does not in terms allege negligence, but upon general demurrer all reasonable intendments are indulged in favor of its sufficiency, and the reasonable inference from the facts alleged in the tenth, eleventh, twelfth, fourteenth, fifteenth, sixteenth, nineteenth, twentieth, twenty-first, and twenty-second sections of the petition shows failure by defendant to exercise ordinary care, and in the twenty-fifth and thirtieth sections it is sufficiently alleged that this proximately caused the death of the plaintiffs' son. We are therefore of the opinion the petition, as against general demurrer, states a cause of action for the death of plaintiffs' son.

It is insisted by plaintiffs that, since negligence is not an essential element of a nuisance and they have alleged a nuisance on their premises, it is not necessary for them to prove negligence in order to recover for the death of their son. In this connection it is further insisted that contributory negligence of the deceased will not bar the action. This view is untenable.

■■ If the allegations showing a want of the proper care by defendant be disregarded, the defendant is at most guilty of but a simple trespass in permitting the branch line to remain upon the premises and in the house carrying a current of electricity. The nuisance is created, not by the simple trespass, but by the negligence of the defendant in the particulars indicated. See title "Nuisances," 46 C. J. § 28, and 20 R. C. L. § 3, at page 382. The proximate cause of the death of the son was the negligence stated, for without such negligence the death would not have occurred. Clearly negligence is the gist of the action for the son's death. Under settled rules his contributory negligence would defeat recovery of damages for his death.

■ The defendant's exception relating to alleged misjoinder of causes of action is without merit. It was proper to sue for and recover in the one action the damages sustained by the plaintiff resulting from the nuisance as well as the damages occasioned by the death of their son. J. L. Daniel. v. Ry. Co., 96 Tex. 327, 72 S. W. 578; Texas & P. Ry. Co. v. Reeves (Tex. Com. App.) 256 S. W. 902.

Defendant's special exception No. 6 is likewise without merit.

What has been said sufficiently disposes of the questions presented by the various exceptions.

Reversed and remanded.