## OLIVAS et ux. v. EL PASO ELECTRIC CO.

### No. 2725.

Court of Civil Appeals of Texas. El Paso.
Oct. 13, 1932.

Rehearing Denied Nov. 10, 1932.

J. A. Gillett, S. P. Weisiger, and W. O. Hamilton, all of El Paso, for appellants.

Brown & Brooke, of El Paso, for appellee.

HIGGINS, J.

The opinion upon the former appeal in this case is reported in (Tex. Civ. App.) 38 S.W. (2d) 165, to which reference is made for statement of the allegations of the petition.

By reference thereto it will be seen the action is to recover damages for an alleged nuisance and for the death of plaintiff's son under the death by wrongful act statute.

The branch electric line upon the premises described in the petition was erected by appellee in May, 1926, by permission of J. G. Melton, the owner of the premises. The premises were under lease to W. D. Malone. Plaintiffs and their son were subtenants under Malone. The main high-power transmission line of appellee was on the highway about one-fourth mile from the residence occupied by plaintiffs and their son. In the branch line leading to the residence there was a transformer. This transformer "stepped down" the high-tension power, with which the branch line was charged from the transformer back to the main line. The transformer was upon the top of a pole about 100 yards from the residence. From the transformer a "ground wire" or "ground rod" ran down the post. A few inches above the ground it was attached to a metal stake driven into the ground. The ground wire and stake, for a few inches above the ground, were bare and uninsulated. The transformer post and ground wire were close to a fence built of barbed wire and wire netting. The fence ran along an irrigation ditch, the banks

of which were wet and moist. On May 16, 1929, the deceased came in contact with an electric current at or near the transformer post. He was severely burned and shocked, in consequence of which he died shortly thereafter.

Defendant answered by general denial and special pleas to the effect that the electric line upon the premises was placed there at request of the owner, Melton, in May, 1926; that same was constructed in the customary way with the best and safest appliances, etc.; and: "(12) Defendant further says that the deceased did not come to his injuries in the way and manner alleged by the plaintiffs, but that in some way or manner he became entangled in or was handling a quantity of small baling wire some distance from the post where the defendant's transformer was located and that said baling wire had either been thrown over the defendant's primary leads, some distance from the transformer post, by the deceased or by some other party to this defendant unknown, thus forming a contact with the ground; that if the deceased threw said wire over the primary lead, as hereinbefore alleged, he was guilty of negligence or contributory negligence, proximately causing or contributing to cause his injuries; that if it was done by some other party, this defendant was not advised thereof and that, in any event, this defendant was not guilty of any act of negligence."

The case was submitted upon the general issue, resulting in verdict and judgment for defendant.

The issues were submitted in the main charge as follows:

"1. If you find from a preponderance of the evidence that, on or about the time complained of by the plaintiffs, the deceased, Jose Olivas, came in contact with a fence, and that at the time such fence was charged with electric current escaping or flowing down the ground wire or ground rod of defendant's transformer post nearest plaintiff's house, and that defendant was negligent in permitting such current to escape or flow down such ground wire or ground rod, and that such negligence, if any, was a proximate cause of the burning and death of the deceased, Jose Olivas, and if you further find that the plaintiffs have suffered financial loss by reason of the death of their son, you will find for the plaintiffs.

"2. Unless you find from a preponderance of the evidence that electric current flowed or escaped down the ground wire or rod as alleged by plaintiffs and that the deceased, Jose Olivas, was burned by reason of electric current flowing or escaping down the ground wire or ground rod, and that defendant was negligent in allowing or permitting such electric current to flow or escape down

such ground wire or ground rod, you will find for the defendant.

"3. If you find that the deceased himself threw a wire or wires over the primary leads of the defendant, and that he was negligent in so doing and that his own negligence was a proximate cause of his injuries, you will find for the defendant.

"4. If you find that the deceased's injuries were due to an unavoidable accident, you will find for the defendant."

At request of defendant special charges were given, which, very briefly stated, are to the effect:

1. The mere operation and maintenance of the line by defendant would not render it liable unless it was guilty of some act of negligence alleged by plaintiffs.

2. To find for defendant unless the jury believed deceased came to his death by the negligence of defendant without any negligence upon his part contributing to his death.

3. To find for defendant if deceased was injured by coming in contact with baling or other stray wire which had accidentally come in contact with the line or had been thrown over the line by other parties.

4 and 5. To find for defendant if deceased became entangled in baling wire some distance from the transformer post, which wire had come in contact with the high transmission line in some unknown way, or through some action of deceased.

6. To find for defendant unless the jury believed deceased was injured by coming in contact with a fence charged with electric current escaping or flowing down the ground wire and defendant was negligent in permitting such current to escape or flow down such wire.

It will be observed the court submitted only the right to recover for the death of plaintiff's son. No error is assigned to the failure to submit any issue as to recovery of damages for the discomfort, annoyance, etc., alleged to have been sustained upon the theory of a nuisance.

■ Various assignments complain of the overruling of exceptions to the answer. They are predicated upon the theory that the branch transmission line upon the premises was a dangerous agency; as such it constituted a private nuisance, and if deceased was injured by such nuisance and died as a result of his injury, the issues of negligence on the part of defendant and contributory negligence on the part of the deceased are unimportant.

The theory was carefully considered upon the former appeal and disposed of as follows:

"As against the general demurrer, the petition stated a cause of action for damages

for the maintenance of a private nuisance as well as for damages for the death of plaintiffs' son under the death by wrongful act statute. Article 4671, R. S.

"The allegations show a condition created by the acts of defendant which disturbs plaintiffs in the peaceable possession and occupancy of their homes, causing constant dread and apprehension, a condition which in fact is dangerous and has already caused the death of one member of the family. A condition of this kind is plainly a nuisance (City of Dallas v. Early [Tex. Civ. App.] 281 S. W. 883; 20 R. C. L. 380), and for the resulting damages the defendant is liable. * * *

"Upon this phase of the case the issue of negligence is immaterial (46 C. J. 663; 20 R. C. L. p. 381, § 3), though as a matter of fact, as later shown, the petition shows that the nuisance complained of is the consequence of the defendant's negligence.

"We pass now to consideration of the petition as stating a cause of action for the death of plaintiff's son.

"The generation, transmission, and distribution of electricity is a practical necessity. The business of generating, transmitting, and distributing the same is authorized and lawful. High-voltage currents of electricity are very dangerous agencies, but, by the exercise of the proper degree of care in the transmission and distribution of the current, its dangerous character is practically eliminated. Failure to exercise such care is, of course, negligence. The petition does not in terms allege negligence, but upon general demurrer all reasonable intendments are indulged in favor of its sufficiency, and the reasonable inference from the facts alleged in the tenth, eleventh, twelfth, fourteenth, fifteenth, sixteenth, nineteenth, twentieth, twenty-first, and twenty-second sections of the petition shows failure by defendant to exercise ordinary care, and in the twenty-fifth and thirtieth sections it is sufficiently alleged that this proximately caused the death of the plaintiffs' son. We are therefore of the opinion the petition, as against general demurrer, states a cause of action for the death of plaintiffs' son.

"It is insisted by plaintiffs that, since negligence is not an essential element of a nuisance and they have alleged a nuisance on their premises, it is not necessary for them to prove negligence in order to recover for the death of their son. In this connection it is further insisted that contributory negligence of the deceased will not bar the action. This view is untenable.

"If the allegations showing a want of the proper care by defendant be disregarded, the defendant is at most guilty of but a simple trespass in permitting the branch line to remain upon the premises and in the house carrying a current of electricity. The nuisance is created, not by the simple trespass, but by the negligence of the defendant in the particulars indicated. See title 'Nuisances,' 46 C. J. § 28, and 20 R. C. L. § 3, at page 382. The proximate cause of the death of the son was the negligence stated, for without such negligence the death would not have occurred. Clearly negligence is the gist of the action for the son's death. Under settled rules his contributory negligence would defeat recovery of damages for his death."

See (Tex. Civ. App.) 38 S.W.(2d) 165, 168.

We adhere to the view thus stated and regard the exceptions as without merit.

■ The second assignment complains of the overruling of a special exception leveled against a portion of the eleventh paragraph of the answer. The isolated portion excepted to is to be considered in connection with the allegations which follow. When so considered the exception is without merit.

■ Exception was also urged against the allegations in the twelfth paragraph to the effect that baling wire had been thrown over the primary lead by deceased or some other person.

It is objected that said allegations are too vague, indefinite, and uncertain and do not definitely charge that deceased threw said baling wire over defendant's primary lead, and neither deceased nor plaintiffs could be legally held accountable for the results thereof if done by another or third party not representing these plaintiffs or deceased.

Defendant had the right to plead different defenses in the alternative. The allegation that deceased threw the baling wire over the primary lead was pertinent upon the issue of contributory negligence, and the alternative allegation that some one else threw it was pertinent upon the issue of negligence charged against the defendant. The allegations complained of are not lacking in clearness. Their meaning cannot be mistaken.

■ Complaint is made of the refusal to permit the witness Malone, employer of deceased, to testify concerning his intention to increase the wages of deceased. The bill does not disclose what the answer of the witness would have been. In this condition of the record the ruling cannot be reviewed. Knight v. Texas & N. O. Ry. Co. (Tex. Civ. App.) 26 S.W.(2d) 672, 674, and cases cited.

■ There was no error in permitting defendant to offer in evidence photographs of the transformer post and the top of the post itself which had been cut off and brought into court. 22 C. J. 769 and 770; Linch v. Paris L. & G. E. Co., 80 Tex. 23, 35, 15 S. W. 208; Gulf, C. & S. F. Ry. Co. v. Boyce, 39 Tex. Civ. App. 195, 87 S. W. 395; St.

Louis & S. F. Ry. Co. v. Ewing (Tex. Civ. App.) 126 S. W. 625; Addington v. Jones, 149 Ark. 669, 234 S. W. 24; Choctaw E. Co. v. Clark, 28 Okl. 399, 114 P. 730, 732.

About March 16, 1929, plaintiffs ceased to use the lights in the residence, and the meter box at the house was removed. The residence occupied by plaintiffs and deceased was the only house served by the line in question.

In the fourteenth, fifteenth, and sixteenth paragraphs of the petition it was charged that when the use of electricity in the dwelling was discontinued the current was not cut off at the main line upon the highway, as it could and should have been done, but the wires were allowed to remain connected there and convey a current of electricity of high and dangerous voltage which was wholly unnecessary as plaintiffs were the only patrons on the line; and that the line had never been inspected and examined to determine whether it had gotten out of repair and was in a safe condition.

Upon the former appeal it was held these allegations show negligence on defendant's part.

The evidence raises the issues of negligence thus pleaded.

▆▆ Plaintiffs, in writing, excepted to the court's charge:

"Third: Because the same fails to submit to the jury the question of whether or not the defendant was negligent in failing to disconnect and cut-out the electric current on its service wires at the public highway where they entered the premises on the Melton place, when they removed the meter and disconnected the lights in the residence occupied by the plaintiffs on the Melton place on or about the 16th day of March, 1929, as alleged by plaintiffs.

"Fourth: Because the same fails to submit to the jury the question of whether or not the defendant was guilty of negligence in failing to inspect and examine said line located on the Melton place and premises to determine whether same was out of repair or in an unsafe condition, as alleged in plaintiff's petition."

The first section of the court's charge, as quoted above, submits the issue of negligence in permitting the current to escape or flow down the ground wire in general terms broad enough to include negligence in failing to disconnect the line at the highway and to inspect and examine.

But it was the right of the plaintiffs to have an affirmative presentation of the facts by them pleaded as negligence and which the evidence supports. M., K. & T. Ry. Co. v. McGlamory, 89 Tex. 635, 35 S. W. 1058; St. L. S. W. Ry. Co. v. Hall, 98 Tex. 480, 85 S. W. 786; M., K. & T. Ry. Co. v. Rogers, 91 Tex. 52, 40 S. W. 956; City of Dallas

v. Jones, 93 Tex. 38, 44, 49 S. W. 577, 53 S. W. 377; S. A. & A. P. Ry. Co. v. Kiersey, 98 Tex. 590, 86 S. W. 744.

Plaintiffs requested two special charges upon this phase of the case, but as drawn they were objectionable in form for which reason their refusal presents no error.

Paragraph 1 of the general charge was defective in the particular indicated, and the plaintiff's objections quoted above imposed upon the court the duty of preparing and submitting in a proper affirmative manner the issues of negligence arising upon the failure to disconnect the current at the highway from the main line and failure to inspect and examine the branch line.

It was formerly the rule of practice that it would have been incumbent upon the plaintiffs to prepare and request proper charges upon these issues but this is no longer true in view of article 2185, R. S. Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183; Robertson & Mueller v. Holden (Tex. Com. App.) 1 S.W. (2d) 570.

The court did not err in submitting the issue of unavoidable accident. The general denial raised the issue upon the pleadings. The evidence is exceedingly voluminous and very meagerly stated in the briefs, but from the statements contained in the briefs and made by counsel upon oral argument, the evidence also raised the issue.

The last two assignments complain of alleged errors in the court's charge and in special charges 1, 2, 3, and 5, given at the request of defendant. No such objections were made in the court below and were therefore waived. Article 2185, R. S.

For the error in failing to properly submit the issue of negligence arising out of the failure to disconnect the current at the highway and the failure to inspect and examine the branch line upon the premises, the case is reversed and remanded.

On Rehearing.

Appellee in its motion for rehearing asserts there is no evidence to raise the issues of negligence arising out of the alleged failure to inspect and disconnect the current at the highway when the use of the lights in the house was discontinued and the meter at the house removed.

To the motion appellants filed a reply quoting the evidence upon these issues which we have checked and find to be correct. It plainly raises the issues mentioned.

Since the case must be reversed, it would be inappropriate to discuss its probative force and effect.

We merely refer to some of the cases which recognize that "electricity is a silent, deadly, and instantaneous force, and one

who uses it for profit is bound to exercise care corresponding to the dangers incident to its use." Rowe v. Taylorville Elec. Co., 213 Ill. 318, 72 N. E. 711, 713; McLaughlin v. Louisville Elec. Light Co., 100 Ky. 173, 37 S. W. 851, 34 L. R. A. 812; Cooley on Torts, 1492. Quoted with approval by Justice Dibbrell in San Antonio G. & E. Co. v. Ocon, 105 Tex. 139, 146 S. W. 162, 39 L. R. A. (N. S.) 1046. See, also, Jacksonville, I. & E. Co. v. Moses, 63 Tex. Civ. App. 496, 134 S. W. 379, and cases cited in 20 C. J. p. 342, note 74.

The motion is overruled.