TEXAS CENTRAL RAILROAD COMPANY v. B. F. HORN.

Decided December 19, 1908.

**1.—Railway—Crossings—Signals.**

In a case where plaintiff's horse, which he was driving along a highway near to and parallel with the railway toward a crossing about one hundred yards distant, became alarmed at an approaching train going in the same direction and, running away, was struck by such train on the crossing, it was not error to charge that the omission of the statutory signals for the highway crossing was negligence in law.

**2.—Same—Causal Connection—Requested Charge.**

Where the omission of statutory signals required to be given by a railway train approaching a highway crossing was claimed to have caused plaintiff's injuries (his horse becoming unmanageable and running on the crossing where

it was struck by the train, which it was claimed he would have prevented by getting out and holding the horse if the signals had been given) it was error, under the evidence here considered and held to raise such issue, to refuse an instruction precluding plaintiff from recovery unless he would have had time to get out and hold his horse had the signals been given at the proper place.

Appeal from the District Court of Bosque County. Tried below before Hon. O. L. Lockett.

*Cureton & Cureton* and *J. A. Kibler,* for appellant.—In this case the injury is shown to have resulted from the uncontrollable acts of a frightened horse, which appellee was driving, and appellant is sought to be charged with the responsibility for the frightened condition of appellee's horse and the resulting injury therefrom; the result of the frightening of the horse being the collision with appellant's engine and cars upon the crossing is merely an incident which in no way affects the question of appellant's responsibility for the frightening of appellee's horse; the question of appellant's responsibility for frightening appellee's horse being the same regardless of whether it resulted in a collision with appellant's engine and cars or in running into the fence or off a bluff or against a tree or ended otherwise injuriously to appellee. And the court erred in charging the jury that it was negligence per se with reference to appellee for the appellant to fail to give the statutory signals at said crossing. Missouri, K. & T. Ry. Co. v. Saunders, 106 S. W., 321; International & G. N. Ry. Co. v. Gray, 65 Texas, 35; Missouri, K. & T. Ry. Co. v. Thomas, 87 Texas, 282; Texas & P. Ry. Co. v. Shoemaker, 98 Texas, 455; Galveston, H. & S. A. Ry. Co. v. Garteiser, 29 S. W., 940; International & G. N. Ry. Co. v. Woodward, 26 Texas Civ. App., 389; Texas & P. Ry. Co. v. Stoker, 103 S. W., 1183; The Western & Atlantic Ry. Co. v. Jones, 8 Am. & Eng. R. R. Cases, 267; Reynolds v. Great N. Ry. Co., 69 Fed., 808, 29 L. R. A., 695; Thompson on Negligence, sec. 1560.

The refusal to give special charge No. 11 is error because it was an application of the law to the facts of the case, and unless the plaintiff in this case would have had time to have gotten out of his buggy and held his horse, then the alleged failure of the defendant's servants to blow the whistle and ring the bell could not have been the proximate cause of the plaintiff's injury, and the defendant had the right to have the specific issue pointed out to the jury, as was done in the charges.

*C. H. Cain, Odell & Johnson* and *W. F. Schenck,* for appellee.—The court did not err in charging that it was negligence per se on the part of appellant should the jury find that it had failed to blow the whistle and ring the bell at a distance of at least eighty rods from the crossing, and keep the bell ringing from said point until the engine shall have crossed said public road. St. Louis S. W. Ry. Co. v. Kilman, 86 S. W., 1050; McKerley v. Red River T. & S. Ry. Co., 85 S. W., 499; Missouri, K. & T. Ry. Co. v. Saunders, 106 S. W., 321; Missouri, K. & T. Ry. Co. v. Magee, 49 S. W., 156; Houston & T. C. Ry. Co. v. Wilson, 60 Texas, 142; Missouri, K. & T. Ry. Co. v. Taff, 31 Texas Civ. App., 657.

The issue as to whether or not the appellee would have had time in

which to have gotten out and held his horse was not raised by the evidence, and if it had been the question was sufficiently presented in the court's main charge under ordinary care, etc. The evidence shows that appellee was only about 100 yards from the crossing and that the whistling post was 440 yards away. That would place appellee 340 yards or 1020 feet from the whistling post.

PRESLER, ASSOCIATE JUSTICE.—This is a personal injury suit commenced in the District Court of Bosque County, on August 7, 1907, by B. F. Horn, plaintiff, against Texas Central Railroad Company, defendant. Appellee in his petition set out in substance that he was struck by the engine and cars of appellant on or about January 5, 1907, and injured, his horse killed and his buggy and harness totally demolished by appellant's negligence. That said injuries occurred at a public crossing on appellant's track about one mile west of its depot situated at Iredell, in Bosque County, Texas. That the accident occurred about twelve or one o'clock at night, while appellee was traveling west along the public road which is parallel to and lies along appellant's railway track and right-of-way and on the south side thereof, from the said station and depot at Iredell to said crossing of said public road and highway, and about forty-eight feet from said track; that said public road and highway at crossing runs in a northern and southern direction; that said public road and highway on the north side of said railway track bends slightly after leaving said crossing to a northwestern and southeastern direction; that while in the act of crossing appellant's track at said public crossing he and his said horse, buggy and harness were struck by appellant's engine and cars running from the east to west and injured. The petition contains the following allegations of negligence, to wit:

1. That appellant negligently failed to blow the whistle at a distance of at least eighty rods from said crossing, or at any time thereafter, and negligently failed to ring the bell at a distance of at least eighty rods from said crossing and negligently failed to keep said bell ringing as required by law for a distance of at least eighty rods before reaching and crossing said crossing and until said crossing was passed by said engine. And negligently failed to blow said whistle and ring said bell or give any other signal or warning to appellee at said time and place. That said injury occurred at about midnight on said date, and had said whistle been blown and bell rung as required by law, or such signal or warning given, appellee would have been warned of the approach of said engine and train some distance before he had reached said crossing, and in time to have prevented his said horse from running away and from going upon or across said crossing at said time and would not have been upon the track at said crossing and would not have been injured at said time and place.

2. Numerous other allegations of negligence are made, including defective headlight, excessive speed, discovered peril, defective construction of roadbed, embankments, etc., defective air brakes and appliances; but as none of these were submitted to the jury as grounds of recovery, we do not deem it necessary to make further reference to them.

Appellant's answer set forth general and special demurrers, a general

denial and a special denial of the general acts of negligence pleaded by appellee, and also pleaded various alleged acts and omissions of appellee as constituting contributory negligence, which it is not necessary for the purposes of this opinion to here specifically set out, and in addition thereto also pleaded that the injuries to appellee were the result of an accident, and not due to any negligence on appellant's part.

Trial was had before a jury on December 19, 1907, and resulted in a verdict and judgment in favor of appellee against appellant for $2,500, from which judgment the appellant appeals to this court and assigns numerous errors, which will not be here consecutively considered.

It appears from the evidence that appellee, at night, on the date alleged in the petition, was traveling along a public road in general use as such, known as the Iredell and Hico road, and that the portion of said road upon which appellee was then traveling ran parallel or side by side with appellant's line of railway and in close proximity thereto, to wit, about forty or fifty feet therefrom, for about a mile—that is, from the station in Iredell to where said public road turned obliquely and crossed appellant's line of railroad; that appellee was traveling west along said public road between said town of Iredell and said crossing toward the latter, intending to use the same, and was distant therefrom about one hundred yards and was between the whistling post (set up by appellant at eighty rods from said crossing) and said crossing when appellee's horse became frightened by the light and noise of appellant's passenger train rapidly approaching from appellee's rear; that appellee's said horse immediately got from under control of appellee and ran rapidly to and upon the said crossing, arriving upon the same so as to come in collision with appellant's said passenger train, resulting in serious bodily injury to appellee, the death of his horse, and the wreck of his buggy. It being the contention of appellee both in the court below and here that appellant's employes failed to give notice of the approach of the train to said crossing by ringing the bell and blowing the whistle eighty rods therefrom, as required by law, and that said failure to give said statutory signals was negligence *per se* upon the part of appellant, and that such negligence was the proximate cause of the injury complained of in this: That, had said signals been given, appellee could and would have gotten out and held his said horse and the injury would not have occurred, he having passed the place where the public expected and the law required the signals to be given; that the place where said signals should have been given was some three hundred and forty yards away and the train was running at the rate of twenty miles on hour, which would have given him some thirty-four seconds in which to have gotten out of the buggy and to his horse. The appellee among other things testified as follows:

"I left Iredell going west on the Iredell and Hico road. The public road crossing of the railroad is about one mile west of the Iredell station. The public dirt road that I was traveling ran parallel or side by side with the railroad from the station to where it crossed the railroad, about a mile west of the station. I never did go to school much. On the particular night when I left Iredell and started home west and along up there parallel with the railroad, I was driving in a walk. At that time I knew there was a whistling post on the railroad near

the road crossing up there and knew about where it was. When I first discovered the train that struck me on this night I was about 100 yards from the crossing where I was struck and driving in a westerly direction, in the same direction the train was going in, and going to the crossing. The first thing that attracted my attention was the horse getting frightened. He got frightened at the train. The light was thrown across the road in front of the horse and he jumped as far as he could. I had control of the horse up until the light was thrown across the road in front of him. I lost control of the horse then. After the horse became frightened or jumped, I could hear the engine making a noise running, the engine pulling, that's all the noise I heard the engine make. The whistle on the engine was not sounded for the crossing. I was listening for it. Knowing my horse as I did, if I had heard the whistle on the engine sounded, I would have gotten out of the buggy and held the horse. Up to the time the light was thrown across the road in front of my horse and the horse jumped, the bell on the engine was not rung. I know that because I was listening. . The cut is somewhere about two hundred yards east of the crossing, and the whistling post was east of the cut a little piece. At the time my horse became frightened my horse was some distance from the whistling post. I was past the west end of the cut at the time my horse became frightened. I suppose the locomotive of the train was about coming into the cut at the time my horse became frightened, coming in at the east end of the cut. I looked back to see whether the passenger train was coming and when I looked back I could see a light of a train. I couldn't tell whether it was the passenger or a freight; it was then at Iredell. I was east of the cut at that time and on the public road. I was about even with the whistling post then when I looked back and saw that headlight at this station. I didn't think there was any use in getting out and holding my horse away up there and the train back at town. I don't know whether that was in fact the passenger train that I saw the headlight of there at that time or not. It was some four or five minutes after I saw that headlight before the passenger train came along. I looked back again after I got behind that dump and I couldn't see back to town, the dump was so high there. I was somewhere about the west end of the cut when I looked back the second time. I looked back to see if the train was coming and I didn't see any train. I had only gone twenty-five or thirty yards further when the light flashed across the road and frightened my horse, I didn't hear the train when I looked back the second time. I was not asleep nor drunk at that time, but had all of my senses about me setting up there in the buggy seat driving along. I never heard it running until it got somewhere about fifty yards from me. The headlight was supposed to be at the lower end of the cut and I couldn't see it, it wasn't high enough to reflect over the dump. After it came out through the cut, then is when it reflected the light in front of my horse and scared him. I don't know just where it was when the light was first reflected through; the track makes a curve there somewhere about the cut. I think it is about the time it gets into the cut or just before it gets into the cut. After the engine came around straight, that threw the light in the road. Yes, I was expecting the train to whistle. I supposed I. would hear it. I knew if it whistled at

the whistling post I could get out and hold my horse after it whistled, and before he got so frightened that I couldn't get to him."

The court having charged the jury in effect that the failure to give the statutory signals referred to, if they found they were not given, was negligence *per se* upon the part of the appellant, and this instruction of the court being here assigned as error, the question is presented as to whether under the statute (Revised Statutes, article 4507), appellant company owed the duty to give the statutory signals for the benefit of this appellee, situated as he was at the time, traveling in the night time upon a public highway running parallel and close to the railway track, appellee being distant about one hundred yards from the crossing at the time appellant's passenger train reached the whistling post eighty rods east of the crossing which appellee was traveling toward and intending to use. On this question, upon an extended consideration of the authorities cited, we feel constrained to hold that the law required appellant to give the signals as set out in the statute, and that said signals are intended to protect those who are approaching the crossing (and are in close proximity thereto) and those who have just crossed, as well as those who are crossing the same when the signals are given.

We believe that the case of the Missouri, K. & T. Ry. Co. v. Saunders, 106 S. W., 321, here cited and relied on by appellant, is distinguished from this case in this, that in the case referred to the appellee Saunders was not upon the crossing, neither when the train reached the whistling post nor the crossing, neither had he been upon the road leading to or from the crossing, nor was he intending to go upon said road or crossing, but was quite a distance from all these places and so situated at the time said signals should have been given as to be a trespasser on appellant's railway track. In the case at bar, however, as hereinbefore indicated, the evidence shows appellee was on the public road, where he had a right to be, near the crossing, going in the direction thereof, and intending to use the same, looking and listening for the train statutory signals, and behind tall piles of dirt excavated from a cut which prevented him from seeing in the direction of the train, and the existence of which piles of dirt and cut was known to the appellant company and its agents. We think there can be no reasonable doubt that it is negligence *per se* for a railroad company to fail to give the signals required by statute when such failure affects a person upon a public highway, either on or near the crossing, and situated as was appellee. In the Kilman case, 39 Texas Civ. App., 107, the appellee, like the appellee in this case, was traveling a road parallel to the railway track near a crossing (though not intending to cross the railroad track) and was watching and listening for the train and signals, the court held that he was within the protection of the statute. We find it unnecessary, however, to base our conclusion on the Kilman case, as in our opinion this is a stronger case as to the obligation upon the appellant to give the statutory signals, for the reason that appellee was here intending to immediately use and did use the crossing. In the case of McKerley v. Red River, T. & S. Ry. Co., 8 S. W., 500, it is shown that the trial court in his charge submitted the question of negligence, as to failure of the company to give the statutory signals, to the jury.

Assignment was made for the railway company that such charge was error upon the ground that: "It is negligence, as a matter of law, for a railroad company to fail to sound the whistle and ring the bell on the locomotive on approaching a public crossing, as provided by the statute, and that it was error to submit the issue to the jury, for them to determine whether such failure constituted negligence," and the court in rendering their opinion say that: "This contention is sustained. The statute makes the failure of those operating railway trains, on approaching a public crossing, to ring the engine bell and sound the whistle, in the manner specified by the statute, negligence; and the court should have so instructed the jury, and not submitted the issue to them to determine whether such failure constituted negligence." We therefore conclude that the court did not err in charging that it was negligence *per se* upon the part of appellant, should the jury find that it had failed to blow the whistle or ring the bell at a distance of at least eighty rods from the crossing and keep the bell ringing from said point until the engine should have crossed said public road. St. Louis Southwestern Ry. Co. of Texas v. Kilman, 39 Texas Civ. App., 107; McKerley v. Red River, T. & S. Ry. Co., 85 S. W., 499; Missouri, K. & T. Ry. Co. of Texas v. Saunders, 106 S. W., 321; Missouri K. & T. Ry. Co. of Texas v. Magee, 92 Texas, 616; Houston & T. C. Ry. Co. v. Wilson, 60 Texas, 142; Texas & Pac. Ry. Co. v. Stoker, 52 Texas Civ. App., 433.

The next question presented in point of importance by this appeal is raised by appellant's tenth assignment of error, to the effect that the court erred in failing and refusing to give defendant's special charge number eleven, which was as follows, to wit: "Although you may believe that the whistle and bell on the engine in question were not sounded as stated in the court's main charge, you can not find for the plaintiff unless you further believe that, had such whistle and bell been sounded as mentioned in the court's main charge, the plaintiff would have had time to have gotten out of his buggy and held his horse, and thereby prevented the injury and damage sued for herein, and unless you so find you will return a verdict for the defendant." Upon a thorough examination of the court's general charge and of the evidence relating to the issue of negligence upon the part of appellant, we are of the opinion that this assignment is well taken and relates to a material issue of the case and should be here sustained. In this suit the negligence relied upon by the plaintiff was the failure to ring the bell and blow the whistle in order to give the plaintiff warning in time for him to get out of the buggy and hold his horse, and thereby prevent the horse from running upon the dirt road crossing over defendant's track and coming in contact with defendant's engine. It therefore appears that the issue as to whether or not, had such signals been properly given, appellee would have had time to have gotten out of his buggy and held his horse, is of the utmost materiality in the proper trial of this case, and the attention of the jury should have been directed to said issue either by covering the same specifically in the general charge given, or by submitting the special charge requested, as stated. It appearing to us that unless the plaintiff in this case would have had time to have gotten out of his buggy and held his horse had said signals

been given as required by statute, then the alleged failure of the defendant's servants to give such signals could not have been the proximate cause of plaintiff's injury, the evidence showing such time would have been between twenty-nine and thirty-four seconds, and we are of the opinion that, the court in its general charge having failed to sufficiently instruct the jury upon the issue presented by said special instruction, the same should have been given, and that the refusal of the court to give the same is such material error as requires this case to be reversed and remanded. San Antonio & A. P. Ry. Co. v. Kiersey, 98 Texas, 590; St. Louis S. W. Ry. Co. of Texas v. Hall, 98 Texas, 480; Texas Trunk Ry. Co. v. Ayres, 83 Texas, 268; Missouri, K. & T. Ry. Co. v. McGlamory, 89 Texas, 635.

Appellant's remaining assignments, alleging various errors on the part of the court in the matter of charges given or refused, and to the rejection or admission of testimony, having been each duly considered, do not in our opinion here present reversible error, and in view of another trial of the case we deem an extended discussion of the same in the order in which they are presented unnecessary.

For the error hereinbefore stated on the part of the court in failing to give appellant's special requested charge, as set out in its tenth assignment of error, this case is here ordered reversed and remanded for a new trial.

*Reversed and remanded.*