## JOHN D. PITTS v. THE STATE.

### *No. 3040. Decided February 25.*

1. **Manslaughter—Evidence.**—It having been proved on the trial that deceased had stated that defendant's wife "was no better than Mrs. Covington," defendant offered to prove that a short time before the homicide deceased and Mrs. Covington were seen in bed together. This proposed testimony was rejected. *Held,* as the fact offered to be proved was not known to the defendant at the time of the homicide, it could neither add to nor illustrate the passion supposed to have been engendered in his mind by the language of deceased above quoted, and was therefore immaterial and irrelevant, and properly rejected.

2. **Same — Insulting Words or Conduct to a Female Relation.**— Insulting words or conduct of the person killed toward a female relation of the party guilty of the homicide will be deemed an adequate cause to reduce a homicide to manslaughter; but it must appear that the killing took place immediately upon the happening of the insulting conduct, or the uttering of the insulting words, or so soon thereafter as the party killing may meet with the person killed, after having been informed of such insult.

3. **Same — Rule of Construction — "Meeting" Defined and Statute Construed.**—A general rule declared by statute as to construction is that "all words used in this code, except where a word, term or phrase is specifically defined, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed." The word "meet," as understood in common language, signifies "to come together by mutual approach; to fall in with another; to come face to face; to converge; to come together with hostile purpose; to have an encounter or conflict." As used in article 598 of the Penal Code it signifies that the parties were brought into such proximity as would enable the defendant to act in the premises, whether he was armed or unarmed.

4. **Same.**—The language of article 598 of the Penal Code is plain and unambiguous. The killing must take place "so soon as the party killing may meet" the insulting party; in other words, it must be done at the first meeting. This much the law has conceded to human frailty and passion. Passion is the evidence of manslaughter under our code, and the passion must be such as would render the mind incapable of cool reflection. The law does not intend to furnish a party with the opportunity and means of taking human life unlawfully. It is only in consideration of ungovernable passion that murder is reduced to manslaughter. Recognizing this infirmity in man, the law presumes such passion will assert itself on the first opportunity, and if the party happens to be or is intentionally armed after hearing of such insults, and he meets the wrongdoer, and under the influence of passion, rendering him incapable of cool reflection, commits the homicide, it is manslaughter. But an opportunity having once occurred for the slayer's passion, by reason of the insults, to assert itself, and he having not then acted, should he afterward, coolly and deliberately, actuated by revenge, commit the homicide, it is murder and not manslaughter.

5. **Same—Charge of the Court—Reasonable Doubt.**—In submitting the issue of manslaughter the court instructed the jury, in effect, that if they believed from the evidence, beyond a reasonable doubt, that certain stated facts had been established, they would find the defendant guilty of manslaughter. *Held,* the rule that "it is not necessary that the jury should believe beyond a reasonable doubt any fact essential to the establishment of a defense, or a lower grade of homicide," is not applicable in testing the correctness of said instruction. Said instruction in the connection in which it occurs in the charge, and considered with other portions of the charge, is correct.

6. **New Trial—Newly Discovered Evidence—Threats Uncommunicated.—** The newly discovered evidence related to uncommunicated threats made by deceased against defendant shortly before the homicide. *Held*, that such evidence was immaterial, and did not constitute ground for a new trial.

7. **Same.—**Uncommunicated threats are mainly admissible in evidence in cases of doubt as to who commenced the difficulty and who began the attack. There was no such doubt raised by the evidence in this case, and hence the uncommunicated threats could have thrown no light upon the case, nor would they tend to affect the result on another trial.

APPEAL from Hill County.    Tried below before Hon. J. M. Hall.

On March 13, 1889, about 12 o'clock m., in Hubbard City, Hill County, Texas, the defendant shot with a gun and instantly killed Dave Stern. Defendant and deceased resided in Hubbard City, defendant being a lawyer and deceased a merchant. Defendant was a married man. There was a hotel in Hubbard City called the Covington Hotel. It was reputed to be a house of prostitution. Mrs. Covington, who kept said hotel, had, shortly prior to the homicide, been prosecuted for keeping a disorderly house, but had been acquitted. Defendant, as an attorney, assisted in the prosecution of Mrs. Covington, and the deceased seems to have interested himself in behalf of Mrs. Covington in said prosecution. Shortly before the homicide defendant was informed that deceased had said that he (defendant) "need not be cutting up about Mrs. Covington, because his (defendant's) wife was no better than Mrs. Covington; that Mrs. Pitts had been to the Covington House, and had said to Mrs. Covington, 'for God's sake give me something to do, I am destitute; I will do anything for money.'" Also that deceased had said "that defendant or himself had to die when they met; that he could not afford to give the defendant any chance; that he was fixed for him, calling attention at the time to a pistol which he (deceased) then had on his person; that if Mrs. Pitts had a child within the next three or four months, defendant would not be the father of it." Deceased denied making the statement attributed to him, and at his instance defendant was informed of such denial, and also that deceased was willing to apologize to defendant for anything he may have said about Mrs. Pitts, or to make any reparation that Pitts would demand. The killing occurred on Tuesday. On the day before, as proved by the testimony of witnesses for the State, defendant was standing on the sidewalk in front of his office, talking with witness White about deceased, when deceased appeared on the same sidewalk, approaching defendant and White. Defendant remarked to White: "Yonder comes the son of a bitch now. Don't let him come here." Deceased was then sixty or seventy feet from defendant, in plain view, and turned into a drug store, purchased a cigar, came out upon the sidewalk, and walked off in an opposite direction from defendant, who was still upon the sidewalk.

At the time, defendant was unarmed, and made no effort to attack the deceased.

The circumstances immediately attending the homicide were that deceased was walking upon the street; defendant, armed with a double-barrel shotgun, came from his residence, and walked rapidly toward deceased. When in about twenty yards of deceased defendant said: "Stern, Stern, you son of a bitch." Deceased turned his head toward defendant and defendant fired the fatal shot, wounding deceased in the face and head, which wounds caused instant death.

At the time deceased was killed he was armed with a six-shooter, which was in his hip pocket, but there is no evidence that he made any attempt to use the weapon.

The trial was had October 30, 1890, and resulted in a conviction of murder in the second degree, with the penalty assessed of confinement in the penitentiary for five years.

*S. C. Upshaw* and *Crane & Ramsey*, for appellant.

*R. H. Harrison*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—This appeal is from a judgment of conviction for murder of the second degree.

Defendant's defense was that the killing was on account of grossly insulting language used by deceased of and concerning defendant's wife.

The first bill of exception was reserved to the action of the court in refusing to permit defendant to prove by the witness Johnson, in effect, that a short time before the killing he (the witness) had stopped at the Covington House, and had there seen deceased and Mrs. Covington in bed together. This fact was not known to defendant at the time of the killing, and could therefore neither add to nor illustrate the passion supposed to have been engendered in his mind by the language used by the deceased, to the effect that "his (defendant's) wife was no better than Mrs. Covington." Such evidence was immaterial and irrelevant, and it was not error to exclude it.

Our statute expressly provides that "insulting words or conduct of the person killed toward a female relation of the party guilty of the homicide" will be deemed an adequate cause to reduce the homicide to manslaughter. Penal Code, art. 597, subdiv. 4. But "it must appear that the killing took place immediately upon the happening of the insulting conduct or the uttering of the insulting words, or so soon thereafter as the party killing may meet with the person killed, after having been informed of such insults." Penal Code, art. 598.

On the part of the State, the proof showed that on the day before the homicide defendant was on the street immediately in front of his

office in conversation with another party about the trouble between himself and deceased, when the deceased was seen coming up the street. Defendant said, when he saw him, "Yonder comes the son of a bitch now. Don't let him come here." Deceased approached to within sixty or seventy feet of defendant, the space between them being unobstructed, and then turned into a drug store, purchased a cigar, and again came out upon the sidewalk and turned and walked off in a different direction from where defendant was still standing. Defendant at this time was unarmed, and made no demonstrations or effort to avenge the insults and wrongs which had been done his wife.

In view of this evidence it was insisted, in behalf of the State, that the bringing of the parties thus near together (within sixty or seventy feet) constituted a "meeting" in contemplation of the statute, and that no subsequent meeting could justly or legally be claimed as a first meeting, or, in the language of the statute, "so soon thereafter as the party killing may meet with the person killed, after having been informed of such insults."

Defendant's counsel contended, and still contend, that the evident meaning of the statutory language is, "the first time the defendant comes in contact with the deceased when defendant is armed and prepared to kill deceased," and a special instruction to this effect having been requested for defendant and refused by the court, the refusal to give the same is strenuously urged as error.

In the brief of counsel for appellant the proposition is boldly announced and urged that our statute intends to give to a male relative, under the circumstances named, not only the opportunity, but the ability at the same time, to kill before such meeting can be counted against him. Carried to its legitimate extent, the contention involves the conclusion that the male relative may meet the insulting party a thousand times if need be, and yet if he is not armed and prepared to kill he may at any time afterward, when he is so prepared and opportunity presents, kill, and that in so killing his offense under the statute may only be manslaughter.

We can not subscribe to such a construction of the statute. To our minds the language is plain and unambiguous. The killing must take place "so soon as the party killing" may meet the insulting party; in other words, it must be done at the first meeting. This much the law has conceded and yielded to human frailty and passion. Passion is the evidence of manslaughter under our code (Hinton v. The State, 24 Texas, 454), and the passion must be such as would render the mind incapable of cool reflection. Penal Code, art. 594, subdiv. 3; Willson's Crim. Stats., sec. 1009-22.

The law never intended to furnish a party with the opportunity and means of taking unlawfully the life of a human being. It is only in consideration of ungovernable passion that murder is reduced to man-

slaughter. Recognizing this infirmity in man, the law presumes such passion will assert itself on the first opportunity; and if the party happens to be or is intentionally armed after hearing of such insults, and he meets the wrongdoer, and being carried away by his passion slays him, the law mitigates the crime and punishment in consideration of the fact that his mind was incapable of cool reflection, and the offense becomes manslaughter instead of murder. It was never intended, and we trust never may be permitted, that an opportunity once being afforded for passion to assert itself, the injured party may afterward, coolly, calmly, and deliberately, select time, place, circumstances, weapons, and his own convenient opportunity, and then in revenge kill his victim without holding him guilty of murder.

We are not aware of any decisions in the reports of this State expressly construing the word "meet" as used in the statute. A general rule declared by statute as to construction is, "all words used in this code, except where a word, term or phrase is specifically defined, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and subject matter relative to which they are employed." Penal Code, art. 10. Mr. Webster defines the word "meet" to mean "come together by mutual approach; to fall in with another; to come face to face; hence, to converge." He also defines it "to come together with hostile purpose; to have an encounter or conflict."

It was insisted, for the State, that a first meeting had taken place the day before the homicide, when deceased came up to within sixty or seventy feet of defendant, defendant having seen him, and there being nothing to prevent him from attacking him.

In Melton's case, 24 Texas Court of Appeals, 47, defendant was armed and seeking for deceased—had the opportunity, but did not avail of it at the time; and it was held he could not claim manslaughter because "it was reasonably made to appear that he saw deceased, and under circumstances in which he might easily have made the effort, and perhaps have accomplished his purpose, but did not do so."

In the Eanes case, 10 Texas Court of Appeals, 421, the killing was upon the first meeting, but not so soon as the parties met, and the main question really involved in that case was "cooling time," after the meeting.

In Richardson's case, 28 Texas Court of Appeals, 216, the killing did not take place "so soon" as the parties met, but afterward the insults were renewed and repeated by deceased to defendant in person, and it was held that the first meeting had no effect in determining the question of manslaughter under the fresh provocation and passion arising therefrom.

Taking the definition of the word "meet," as above given, in its common acceptation, and in relation to the context and subject matter

of the statute, we are of the opinion, whenever the parties were brought into such proximity as would enable defendant to act in the premises, whether armed or unarmed, this would constitute a meeting such as the law contemplates. Whether such a meeting has taken place is a question of fact to be determined by the jury, under the circumstances in evidence.

We are of the opinion that the question in this case was sufficiently submitted to the jury in the charge of the court, and that no error was committed in refusing defendant's special requested instructions; that portion we have discussed not being the law, and the remaining portions being upon the weight of evidence.

But it is insisted that the court not only committed a grave, but fundamental, error in the manner in which the law of manslaughter was submitted upon that issue, as raised by the evidence. The portion of the charge complained of is as follows, viz.:

"If the defendant had been informed that said Stern had used insulting language about his (defendant's) wife, and when defendant heard of said language the same created in the mind of defendant such passion as to render his mind incapable of cool reflection, and acting under the impulse of said passion, if any, he, with a gun, shot and killed the said Stern the first time he met him after he had been informed that Stern had used insulting language about his (defendant's) wife, then you are instructed he would be guilty of manslaughter. And if you belief from the evidence, beyond a reasonable doubt, that the defendant did kill said Stern in the manner and under the circumstances as before explained in this paragraph, then you will find the defendant guilty of manslaughter and assess his punishment."

To this paragraph of the charge the defendant, by his counsel, excepted before the jury retired, because it required the jury to believe beyond a reasonable doubt all the facts necessary to reduce the homicide to manslaughter before they could reduce the grade of his offense.

In support of this position we are cited to Rockhold's case, 16 Texas Court of Appeals, 577, in which this court held that it was not necessary that the jury should believe beyond a reasonable doubt any fact essential to the establishment of a defense or a lower grade of crime. "On the contrary," it was said, "if they have a reasonable doubt of the existence of the facts essential to establish the higher grade of offense, the defendant is entitled to the benefit of such doubt. The jury should never be required to apply the reasonable doubt to the existence or non-existence of a defense before they should give the defendant the benefit of such defense." As thus announced, the rule of law is unquestionably correct; but, in our opinion, it is not applicable in this instance, taking the charge as a whole, and considering the paragraph quoted in connection with the context.

After having correctly applied the law of murder in both degrees to the facts, the court instructed the jury: "If, under the evidence and the instructions given in this charge, you have a reasonable doubt of defendant's guilt as to murder of the second degree, then you will acquit him of that offense, and will next consider whether, under the evidence and the law as given in this charge, he is guilty of manslaughter, or whether he was justified in taking the life of Dave Stern, if you find he did kill said Stern." Immediately succeeding this is the language in the paragraph quoted, which is so bitterly complained of.

We think that the complaint is unwarranted and untenable. The court has evidently disposed of the higher grades, and is now instructing as between manslaughter and self-defense. As between these two issues the jury must find manslaughter beyond a reasonable doubt. He is not applying the reasonable doubt to manslaughter as a lesser degree, but to manslaughter as a crime, as against self-defense, or no crime at all, and in such case the jury are properly told they must find manslaughter beyond a reasonable doubt to warrant a conviction of that crime.

An objection similar to the one here urged was made to an instruction given upon manslaughter by the same learned judge in Drake's case, *ante,* p. 265. In that case this court held the charge not obnoxious to the objection, but correct as far as it went. In this case we do not believe the instruction erroneous, or subject to the criticism urged against it, when read in connection with and in the light of the whole charge.

As to self-defense and threats, we are of the opinion the charge is amply explicit in its presentation of the law, and the court did not err in refusing defendant's special instruction bearing upon the phases of the case as made by the evidence.

Nor did the court err in overruling defendant's motion for a new trial. In so far as the same was based upon newly discovered evidence, the affidavits of the proposed witnesses show that their evidence related exclusively to threats made by deceased toward defendant a short time before the killing, which threats they swear were uncommunicated to defendant.

Uncommunicated threats are mainly admissible in evidence in cases of doubt as to who commenced the difficulty and who began the attack. Whart. Crim. Ev., 9 ed., p. 757. There is in this case no doubt as to the fact that defendant, and not the deceased, was the first to make the attack. He emerged from his gate, with his double-barrel gun, and if he hailed deceased at all, as it is contended, he gave him no time to draw his weapon before firing the fatal shot. That the deceased had threatened him, and that those threats had been communicated, was proved on the trial. These uncommunicated threats could have thrown

no light upon the case, nor do we believe they would tend in any manner, under all the facts in evidence, to affect the result on another trial.

We have given the case our most careful consideration, aided, as we have been, in our investigations by the able oral argument and brief of distinguished counsel for appellant, and we have found no such error in this record as requires or demands a reversal of the judgment. It is therefore affirmed.

*Affirmed.*

Davidson, J., being disqualified, did not sit in this case.