UNITED STATES EXPRESS CO. v. TAYLOR.

(Court of Civil Appeals of Texas. Amarillo. December 17, 1912. On Motion for Rehearing, May 10, 1913.)

1. MUNICIPAL CORPORATIONS (§ 705*)—INJURIES UPON STREETS—VIOLATION OF ORDINANCE.

Plaintiff, who had driven up to the left-hand curb of the street, and was there holding a conversation with a pedestrian, is not violating an ordinance providing that each person traveling in any vehicle upon meeting another shall turn to the right so as to enable the vehicles to pass without accident, so as to preclude a recovery for injuries from the running away of his horse which was caused by the negligence of defendant's driver who cracked his whip and made loud noises in driving past plaintiff; there being no meeting or passing within the ordinance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 705;* Highways, Cent. Dig. §§ 461, 465, 469.]

2. DAMAGES (§ 39*)—REMOTENESS—INJURY TO PROPERTY.

Where the negligence of defendant's driver caused plaintiff's horse to run away, damages for the depreciation in the value of the horse which had been a gentle animal, but was rendered vicious by the runaway, are not too remote to be recovered.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 260–284; Dec. Dig. § 39.*]

3. DAMAGES (§ 158*) — PERSONAL INJURIES — PLEADING.

In a personal injury action, an allegation that plaintiff's entire nervous system was affected is not so general as to be subject to exception, and evidence that plaintiff was nervous is admissible where it did not appear he was suffering from any recognized nervous disorder.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 441–444; Dec. Dig. § 158.*]

4. TRIAL (§ 251*) — INSTRUCTIONS — APPLICABILITY TO ISSUES.

In an action for damages for injuries received upon the running away of plaintiff's horse which was caused by the negligence of defendant's driver, where the petition averred that the driver popped his whip, stamped his feet, whistled, and hallooed, a charge submitting the negligence of the driver in whipping his horse, popping the whip, and making unusual noises was not improper as submitting grounds of negligence not pleaded.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

5. TRIAL (§ 139*) — QUESTIONS FOR JURY — SCINTILLA OF EVIDENCE RULE.

In order to require an issue to be submitted to the jury, there must be something more than a mere scintilla of evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

6. TRIAL (§ 252*)—INSTRUCTIONS—QUESTIONS FOR JURY.

In an action for damages for injuries received by plaintiff in a runaway caused by the negligence of defendant's driver, where plaintiff testified that he did not have time to see what occurred in detail, but, when he first looked to see what caused his horse's fright, he saw a very high express wagon drawn by two horses, the driver of which was slashing them with a whip, and there was no other evidence that the form of the wagon caused the fright of plaintiff's horse, the refusal of a charge submitting the question whether the top of the wagon caused the runaway was proper; plaintiff's testimony at most merely describing the wagon, and not affording more than a scintilla of evidence for the question sought to be submitted.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

7. MUNICIPAL CORPORATIONS (§ 705*)—INJURIES ON STREET—PROXIMATE CAUSE—CONCURRING NEGLIGENCE.

Where an injury is caused by the concurring force of defendant's negligence and of some other cause for which he is not legally responsible, he is nevertheless liable if the damage would not have occurred except for his negligence, consequently, where plaintiff's horse was caused to run away by the acts of defendant's driver in cracking his whip over defendant's horses, and also by the shape of defendant's vehicle, defendant is liable if the accident would not have occurred except for the negligence of the driver.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 705.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

**8. TRIAL (§ 260*) — INSTRUCTIONS — INSTRUCTIONS COVERED BY THOSE GIVEN.**

A requested charge covered by the charges given is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**9. MUNICIPAL CORPORATIONS (§ 706*)—INJURIES ON STREET—INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.**

In an action for injuries received by the running away of plaintiff's horse, caused by defendant's driver, a charge submitting the defense of contributory negligence, which, after specifying the elements of the defense, stated that, "if either of the acts" on plaintiff's part was negligent and contributed to his injury, the verdict should be for defendant, is not improper in charging that all the elements of contributory negligence must have concurred in order to support the defense.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

**10. MUNICIPAL CORPORATIONS (§ 706*) — INJURIES TO PERSONS UPON HIGHWAYS—DRIVER OF HORSE—NEGLIGENCE.**

It cannot be held as a matter of law that one driving a gentle and city-broke horse is guilty of negligence in failing at all times to have such a grip on the reins that he might control the horse if it was suddenly frightened by the cracking of another driver's whip; no one being required to anticipate such contingency.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518; Dec. Dig. § 706.*]

**11. TRIAL (§ 253*) — INSTRUCTIONS — DISREGARDING EVIDENCE.**

In an action for injuries received upon the running away of plaintiff's horse, where the petition alleged that it was caused by the negligence of defendant's driver who snapped and popped his whip, whooped, and whistled, and stamped his feet upon the boards of the wagon, but part of these acts of negligence were not proven, a requested charge that, if defendant's driver was not guilty of the negligence or of any of the acts of negligence in driving his wagon 'charged by plaintiff, then to find in defendant's favor, is properly refused because disregarding the evidence tending to prove some of the acts of negligence charged.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

On Motion for Rehearing.

**12. MUNICIPAL CORPORATIONS (§ 705*) — INJURIES TO PERSONS ON HIGHWAY—NEGLIGENCE.**

One driving along a city street, who cracked his long whip within a few feet of a horse standing at a curb, is negligent, regardless of whether the driver used care in so doing.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515–1517; Dec. Dig. § 705.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by James A. Taylor against the United States Express Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Turner & Wharton, of Amarillo, Thompson & Barwise, of Ft. Worth, and Frank H. Platt, of New York City, for appellant. Barrett & Jones and Synnott & Fish, all of Amarillo, for appellee.

HENDRICKS, J. This is a suit for damages for personal injuries instituted in the district court of Potter county by appellee Taylor against the appellant, the United States Express Company, in the trial of which verdict and judgment were rendered upon appellee's third amended original petition, in which it was alleged in substance: That one of the drivers of appellant's teams, hitched to one of its express wagons, while on one of the main streets of Amarillo, negligently "popped" a large whip in an unusual, loud, and reckless manner, "stamped" his feet on the boards of said express wagon (and other allegations not necessary to mention), and which caused appellee's horse, hitched to a buggy, in which he was sitting at the time, to become suddenly frightened, throwing him from the buggy, injuring him physically in numerous particulars; occasioning suffering and pain, causing the destruction of his buggy, and the value of his horse as a buggy horse; further demanding reimbursement for amounts paid for medicines, physician's services, etc. After denial and exceptions, appellant specially pleaded an ordinance of the city of Amarillo, which, in substance, required that persons traveling in any kind of vehicle meeting each other in any street of the city that "each person so meeting shall turn off and go to the right side of the street," "so as to enable such vehicles to pass each other without accident," prescribing a penalty for its violation, alleging compliance of the ordinance by the driver of the express wagon, and the violation of it by appellee, in effect, that when its driver was traveling on the proper side of the street, and meeting the appellee who was on the left or west side of the street, "that the presence of appellee on the left side of said street at said time and his failure to turn to the right as required by the ordinance" precluded a recovery; appellant further alleging "that if appellee had had hold of the line or lines, or had had a secure hold" of the same, that he could have prevented the horse from running, which also prevented recovery. Just prior to the time the horse became frightened appellee had driven, according to his statement based upon recollection, from the opposite side of Polk street, and had turned in parallel to the curb of the sidewalk, the horse and buggy fronting north and at rest, and appellee, while sitting in the buggy, had assumed such a position facing the sidewalk that he was talking to a party standing upon the curb to the left of appellee when the horse started; appellant's driver of the express wagon, describing appellee's position at this time, as "leaning on his left elbow, resting on the side of the buggy seat," talking to the man on the sidewalk, with the lines "down on the dashboard," which latter statement in regard to the position of the harness reins was denied by appellee by the assertion that

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the lines were in his hands at that moment, when the horse started. The express driver, driving a team of large draft horses hitched to an express company's vehicle, was coming in the opposite direction, and going south on Polk street, to some place of business for express packages for the business of the company, and when almost facing appellee's horse in the position mentioned with appellee in the buggy, as stated, struck the horses, or one of them (just which we are unable to definitely infer), causing his whip to "pop" and "crack" within a few feet of and sufficiently close to appellee's horse as to suddenly frighten him, causing him to "rear up" and run, producing the injury and damage for which he recovered. Appellant's driver saw the appellee, his horse and buggy, and the position of all at the time he was "popping" the whip, which was from 5½ to 6 feet in length, which with the usual reach and extension of a man's arm in popping a whip of the length of this one, and the position toward appellee's horse at the time, and the knowledge of the express driver, and his proximity to the horse and buggy, constituted his acts negligence. Appellant's driver testified on direct examination that he was 20 or 25 feet from the buggy horse when he popped the whip, and on cross-examination said: "I was close enough to Mr. Taylor when his horse started to turn that I had to stop my team at once in order to keep his horse and buggy from hitting my team." The frightened horse swerved and "pulled down to the south," in the language of the witness Whitcomb, the same direction the express wagon was traveling. Appellant's agent and driver further testified, "It is a fact that just as Mr. Taylor's horse went to wheel, that *I had popped the whip*," and had previously said that the team was slow, and he "had to hit pretty good licks," and when he hit his horse on this particular occasion he thought "the whip cracked." Whitcomb, a drug clerk, standing near on the sidewalk at the time, and a disinterested witness, said, "The express wagon was close to Mr. Taylor's horse at the time of the accident and when he was popping the whip" that he did not remember how loud, or that he really cracked the whip, but that "the whip was making some noise," and he remembered that "it hit the horses," and the wagon and "horses were coming right toward Taylor at the time Taylor's horse turned," and another witness, Betty, testified that the express driver at the preceding corner, Fifth and Polk streets, before reaching Taylor's horse in the same block, was "slashing and popping his whip over the horses." Appellee said he did not have time enough to see what occurred in detail, but when he saw his horse just in the act of turning very short, and "saw what it was that caused the horse's fright. I saw a large express wagon with a very high top and was drawn by two horses. They were driven by a man who was slashing his horses with a whip, once or twice I saw him strike the horse I know, maybe twice, and they were plunging. They looked like they were coming right into my horse, and they were very close."

[1] First. Appellant insists that on account of the city ordinance, appellee having violated the same, for which he would not have been injured, the trial court should have peremptorily instructed the jury to find in its favor, and the recitation by us of the substance of the ordinance is sufficient in discussing it. Appellant's brief contains numerous cases where persons, temporarily for a reasonable time, for business, or rest, stop upon the highway, or withdraw from it (the latter case was of a team hitched off the highway, which had broken loose and ran into the highway and was injured by a defective bridge), have not lost the rights of a traveler; and because the ordinance in this case uses the language, "in cases of persons traveling," in any vehicle, "meeting each other in any highway," that perforce of the decisions above, the appellee in this case, although at rest, talking to another on the sidewalk, had not lost his status as a traveler, and extends the logic, we presume, that he was "traveling" within the spirit of the ordinance. And again, on account of the ordinance using the additional language, "each person so meeting shall turn off and go to the right side of the street," and because the Court of Criminal Appeals held in the case of Pitts v. State, 29 Tex. App. 374, 16 S. W. 189, that, "whenever parties were brought into such proximity as would enable defendant to act in the premises, * * * this would constitute a meeting, such as the law contemplates" (construing the manslaughter statute), ergo, this was a "meeting" within the scope of the ordinance. Of course, the purpose of this ordinance was to define the rights of travelers—those only traveling within the purview of the ordinance—and to facilitate travel, avoid collisions and accidents, and we believe the statement of the ordinance is within itself sufficient refutation of the appellant's logic. The context of the ordinance is the proof of its meaning, and the meaning of "meeting" in the manslaughter statute, and the status of a traveler, and when one is traveling, within the contemplation of the decisions and statutes discussed by appellant, we think have not the slightest bearing upon the meaning of this ordinance. The appellee was not "traveling" in the sense of the ordinance, neither did he "meet" the appellant as contemplated therein, nor were these parties to "pass" each other within the intention of this act by each turning to the right; and, if appellee was on the wrong side of the street, it would require some other ordinance condemning his position on that side of the street, in order that contributory negligence may be inferred to come within the rule announced in the case of Ry. Co. v. Carter, 98 Tex. 196, 82

S. W. 782, 107 Am. St. Rep. 626, cited by appellant as decisive of this case. Our consideration of the decisions upon this matter, whether of the common law of the road or some statute enacting a law of the road, is that a person unless in some position condemned by the law, whether of custom merged into a rule, or a statute effectuating the same purpose, may assume any position upon the highway he desires, and appellant has exhibited no other ordinance.

The statutes of Massachusetts required travelers meeting each other "seasonably to drive to the right," and the Supreme Court of that state, passing upon that statute, "commonly called the law of the road," and in substance similar to the ordinance under consideration, in the case of Lovejoy v. Dolan, 10 Cush. (Mass.) 497, said: "The language of the statute manifestly has reference only to the meeting of persons traveling on the same highway. The terms 'meet' and 'pass' are used in their strict signification, and are intended to apply only where travelers are *approaching each other from opposite directions*, intending to pass on the same road" (the emphasis is ours); and again said, "The statute was designed to prescribe a clear, well-defined rule, applicable only to one particular case or contingency." Again, the Supreme Court of the United States in passing upon the maritime law of the road said: "Article 11 of the regulations enacted by Congress provides that, if two sailing ships are meeting end on * * * so as to involve risk of collision, the helms of both shall be put to port, so that each may pass on the port side." "Ships are meeting 'end on' within the meaning of that provision as they are approaching each other from opposite directions, or on such parallel lines as involve risk of collision on account of their proximity." Brown v. Slanson, 7 Wall. 656, 19 L. Ed. 159. The evidence in this record placing the positions of the parties as indicated conclusively we think under the terms of the ordinance, does not bring the occurrence within the terms or the spirit of the ordinance, and, fortified by the decisions quoted, we overrule all assignments on that question, challenging the judgment of the court.

[2] Second. Appellant insists that the depreciation in value of appellee's horse as a buggy horse, without some specific physical injury to the horse, is not an element of damage—too remote, and not within the test of anticipation of a contemplated injury within the rule. In passing upon the assignments, the propositions and statements thereunder relevant to this subject, it is to be noted that the only objection is one of remoteness of damage, and upon the following authorities we overrule the objection: "Common experience and common sense teach mankind that the market value of a horse is greatly lessened by its habit of taking fright at any object and running away. * * *

It is true that the testimony does not show that the horses received any bodily injury by running as they did, but they would be lessened in value by the vicious habit which they would learn." Oleson v. Brown, 41 Wis. 413. "Upon proof that injury to a horse had affected his disposition for steadiness and gentleness, and that his value had been appreciably diminished thereby, a request to charge that the injury was too remote and uncertain for consideration was properly refused." From syllabus. Oliphant v. Brearely, 54 N. J. Law, 521, 24 Atl. 660. The sudden apparition of danger will at times scare the gentlest horse. "Even safe and well-broken horses do sometimes shy as the result of sudden fright." Neal v. Kendell, 98 Me. 74, 56 Atl. 211, 63 L. R. A. 670. The evidence is conclusive that the driver of the express wagon saw Taylor, the buggy and the horse, when he "popped" his whip.

[3] Third. Appellant says that the court erred in not sustaining his special exception to appellee's petition, wherein the latter alleged that his entire nervous system was affected by the negligence charged, and should have been more specific as to how the nervous system was affected. A close consideration of the testimony adduced in appellant's statement to sustain the assignment, and all the allegations of appellee as to his injuries, indicates that all the injuries testified about except as to his nervous condition may be attributable to the other injuries complained of, except possibly his loss of appetite, which we are inclined to think is evidence merely of a result, as was the injury to his nervous system, and concomitant with it, of the fall, the jar, the unconscious condition, etc. Witness did testify that "he was nervous," and "his nerves affected him to a certain extent," and the doctors "found him in a nervous condition," which was no more than the allegations; of course, it may be that neurasthenia or the development of some specific nervous complaint as the result of the shock, especially if objected to, in view of the previous special exception, should not have been admitted; but the evidence does not present any typical development of the shock referable to his nervous system, and a man's nervous system may be affected, and he may be in a nervous condition without a specific result, and appellant's exception would eliminate, if sustained, the proof of a nervous condition as the result of an injury, on the ground that you should be more specific when you are unable to particularize. We think no injury is shown by the court's action.

[4] Fourth. Under the eighth assignment of error, appellant complains that the court erred in the fourth paragraph of the main charge in not confining the jury to the acts of negligence specifically alleged. The particular portion of the charge in question is, "and the defendant's said employé was whipping his horse and popping a large whip, and *mak-*

*ing unusual noises,*" and appellant comments, "that it will be seen that by the use of the term 'unusual noises' that it would allow the jury to consider noises which were not specially alleged to be negligence," etc.; other noises made individually .by the express company's agent were alleged, and appellant's point under his assignment is not that other noises manifested by him were not sufficiently proven, but that it permitted the jury to consider noises not sufficiently raised in the pleading. The reading of the charge confining the consideration of the jury to noises personally made by the driver, and appellee's allegations of "noises" made by him, refute the objection, we think, without argument.

[5-7] Fifth. The appellant again insists that the trial court committed error in refusing the submission to the jury of the following specially requested instruction: "If you find and believe from the testimony that plaintiff's horse was caused to frighten and run away from the sight of the wagon of the express company, or the sight of the top of the wagon, or the movement of the wagon and the top thereof toward said horse, and that but for the sight of such wagon and top aforesaid the horse would not have become frightened and run away, then you are instructed to find in favor of defendant." We quote a part of appellee's testimony appropriate to the discussion of this assignment as follows. "I did not have the time to see what occurred in detail. But at the time I did have to look I saw what it was that caused the horse's fright. I saw a large express wagon with a very high top and was drawn by two horses. They were driven by a man who was slashing his horses with a whip. I did not see, I don't know how many times I saw him strike the horse; once or twice I saw him strike the horse I know—maybe twice—and they plunged. They looked like they were coming right into my horse and they were very close." Appellant stresses the particular part of the testimony where appellee says that he "saw what it was that caused the horse's fright. I saw a large express wagon with a very high top and was drawn by two horses"—and omits the qualifying part of the testimony where appellee observed that the horses hitched to the wagon with a very high top were driven by a man who was slashing his horses with a whip, and he did not know just how many times he saw him strike the horse, once or twice, maybe twice, and they were plunging. We are unable to place the same construction upon the testimony made by appellant which is evidently to the effect that the statement in regard to the wagon with a very high top segregated from the statement following, as to the driver slashing his horses with a whip, would be substantively sufficient to submit the special charge to the jury that the wagon with a high top was the proximate cause of the injury, and hence plaintiff could not recover. The testimony is conclusive that appellee did not see his horse as it started, but that it was the sudden exertion of the animal which caused him to turn, and his testimony is really more susceptible of the construction that the wagon with a very high top was an identification of a wagon containing the driver sitting in the wagon with a high top, who had slashed his horses with a whip and they were plunging. If our conception is wrong in this respect, we, however, believe that this whole testimony is susceptible of the construction that the driver of the express wagon just prior to the sudden fright of the animal by the popping of a 5½ or 6 foot whip, and striking the animals that he was driving with the same and practically in the face of appellee's horse, was the real and efficient cause of the fright of appellee's horse, and the injuries resulting thereby. It is uncontradicted that this was a gentle horse, "city broke," unafraid of automobiles, street cars, and wagons, and had been used constantly on the streets of Amarillo for a considerable period of time prior to this accident, and driven by the members of the family as well as the appellee and his brother, who used said horse in the pursuit of their business in said city. To extract and differentiate the statement in connection with the large express wagon with a very high top from the further statement by appellee of the whipping of appellant's horses by his driver would be, we think, to give undue prominence to a bit of insufficient testimony which at best we think could only raise a surmise without a reasonable belief of the existence of the fact of the wagon causing the frightened condition of the horse. The doctrine of the "scintilla" of testimony for the purpose of submitting an issue to the jury, or granting a motion for a new trial upon such testimony, has been abandoned in this state. Chief Justice Gaines said in the case of Washington v. Missouri, Kansas & Texas Ry. Co., 90 Tex. 321, 38 S. W. 766, that "We recognize the rule that, in order to require an issue to be submitted to the jury, there must be something more than a scintilla of evidence. There must be evidence sufficient to warrant a reasonable belief of the existence of the fact which is sought to be inferred." All the witnesses who saw this trouble, including the appellant's driver, testified practically that there was a "popping" and "cracking" of a 5½ or 6 foot whip within very close proximity of the face of appellee's gentle buggy horse, and it is so much more reasonable to conclude that this whip in the manner of its use caused this horse to suddenly become frightened and rear and plunge in the manner that he did than the wagon and the top, it being inferable from the disposition of the horse shown in evidence that he was habituated to all modes of vehicles on the streets of that city, and hence we are unable to resist the conclusion that those acts of pop-

ping the whip were the principal efficient causes of the movement of appellee's horse, rather than of any other act or condition arising at the time. We acknowledge the doctrine that the wagon and the top especially under the pleadings in this case would be insufficient as actionable negligence on account of having been used by the defendant on this occasion to sustain a recovery of itself by appellee. Of course, the rule is well settled that if damage is caused by the concurring force of defendant's negligence and some other cause which he may create, but for which he is not legally responsible, he is nevertheless liable if the damage would not have occurred except for defendant's other concurring act, or where an act of negligence concurs with some other act or event, which other act of itself would excuse the defendant from liability, and each contributes to cause the injury, the plaintiff may nevertheless recover if the act for which he is not responsible is not the proximate cause, but both concurring constitute the proximate cause and produce the injury. We are constrained to overrule the assignments of error and propositions complaining of this matter.

[8] Sixth. Appellant also complains of the refusal of the trial court to give the following special instruction: "You are charged that should you find for plaintiff herein that, in assessing his damages, plaintiff is not entitled to recover any damages for any pain he may have suffered at any time after the happening of the accident in question, except * * * such as the testimony has shown to you to have been the direct and proximate result of the negligence of defendant, if any." Our construction of the court's charge is that the trial court in substance did exactly that which appellant claims he did not do. He informed the jury, in substance, in the fourth paragraph of the charge that if they believed the acts of appellant's driver constituted negligence and frightened the horse hitched to the buggy in which plaintiff was seated, and thereby caused him to be thrown from the buggy, and in so doing he received the injuries to his person in the manner alleged in the petition, and further instructed them: "And if you believe from the evidence that the negligence, if any, of defendant's said employé, was the proximate cause of such injuries and damages, then you will find for plaintiff and assess his damages as hereinafter directed." The court also defined proximate cause, and in the sixth paragraph told the jury that "in estimating such damages you may take into consideration the physical and mental suffering, if any, that were the proximate result of the injuries sustained." We overrule the assignment.

[9] Seventh. Appellant, by its eleventh assignment, assails the eighth paragraph of the court's charge, in which its defenses were submitted to the jury; complaining that its defense of contributory negligence, to

the effect that Taylor did not have the buggy reins or either of them in his hand at the time the horse started, was so conjoined with other elements in the charge that the jury were required to first find the other elements before they could find he was negligent in not having hold of the buggy reins; and which was specifically condemned by the Supreme Court in the case of Railway Company v. Hall, 98 Tex. 480–489, 85 S. W. 786. We interpret the portion of the charge copied in the assignment differently from the appellant. After charging the different elements constituting appellant's defense, the court said, "And you further believe that either of said acts on plaintiff's part was negligence and contributed to his injuries, and damages, if any, you will find for defendant"—clearly making the charge disjunctive and directing the jury that either element may be considered as a substantive defense, easily, we think, discriminated from the charge in the case of Railway Co. v. Hall, supra.

[10] The appellant is also urgent that the court should have given a special charge embodying the two propositions that if appellee did not have hold of the lines, or if he did have hold of them, that he did not have such hold "as enabled him to control his horse," and the failure as to either was negligence, and to find for defendant. That part of the special charge invoking the defense of an insecure hold on the line or lines insufficient to enable him to hold the horse, if an ordinarily prudent man would have done so, we believe is carrying the doctrine too far under the circumstances of this case; also liable to confuse. The hold on one line in case of a sudden fright and movement would necessarily not enable appellee as a typically prudent person to hold the horse, at least the chances will be quite remote that an ordinarily prudent man could do so, and such a charge may be confusing. And again, if this were a gentle buggy horse, which the record concludes, and appellee actually had the lines in his hands, we are inclined to think it would attentuate the doctrine of ordinary care, and create quite an extraordinary test of anticipation, under the circumstances that appellee as a prudent man should have had the lines clinched sufficiently in his hands as to enable him to hold a suddenly frightened horse. The Hall Case, supra, was one where it was charged the plaintiff in crossing or just after having crossed a railroad track with lines hanging down, and while actually driving the team, and before he could get them up, "they (the team) ran on an embankment." He was crossing, or had just crossed, a railroad track upon a street in Wolfe City, and was at or close to a place "where several railroad tracks crossed the street," and "an engine having passed, * * * and stopped a short distance west of the crossing." While he claimed he saw nothing to indicate a con-

templated movement of the engine, it is beyond argument that a person would be considered negligent, surrounded by such conditions, if the jury believed the lines of the driver were in the position there asserted. The test of anticipation would be apparent, and contributory negligence would follow. As Chief Justice Gaines said in the leading Bigham Case (Texas & P. R. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162), the difficulty is in applying the doctrine of anticipation. In that case the owner of cattle was standing at a defective stockyards gate, when the shriek of a passing locomotive caused the cattle to scare, break down the gate, and injure the owner, as well as causing injury to the cattle. The test of anticipation by the railway company of the owner standing at the gate made his injuries too remote, but the injuries to the cattle were consequential and recoverable. Conditions change the test of anticipation. A man fires a gun in a public street, if he sees no one, but injures some one, he is liable, but fires the same gun in his own private woods, and sees no one but injures some one, he is not liable. If appellee had hold of the lines over a gentle buggy horse, we think the test of anticipation would be too great that as a prudent man he should have such hold as to enable him to have prevented them from being jerked from his hands, in the face of a sudden and unexpected act. We think for the reasons given the special charge was correctly refused; the general charge sufficiently covering the issue.

[11] Eighth. Appellant submitted a comprehensive special charge, "which sought (quoting from his proposition) to instruct the jury affirmatively that, if appellant's employé was not guilty of the negligence or any of the negligence charged by appellee," then to find in appellant's favor. Appellee had charged in the petition that appellant's employé was "whooping, halloing, and whistling and stamping his feet on the boards of said wagon, swinging and reeling his body," as acts of negligence, and which were not proven as producing the fright of the horse, or sufficiently proven really to raise the issue. The witnesses who saw the occurrence and testified to the driver's acts immediately preceding the runaway including the driver testified to the use of the whip, but not to the acts charged and quoted by us from the petition. A special charge should apply the law to the facts, as much so as the general charge. A reading of the numerous decisions quoted by appellant, at least a number of them, emphasize the principle; it is elementary. A great many of them in which special charges were requested and refused raised substantive defenses or matters to which the litigant was entitled, not covered sufficiently by the main charge, and in all of them the charge requested was applicable to the facts. The special instruction in question is framed in such language that if the jury found that defendant's employé was not guilty "at the time of the accident of the negligence charged by plaintiff, or any of the negligence charged by plaintiff in the manner he was driving said wagon or handling the same," to find against plaintiff, irrespective of the strong preponderating testimony of the "popping" of the whip causing the injury. In other words, if the jury found that the driver in urging his horses as to the other acts of negligence charged against him, or any of them, quoted by us from the petition, were not true, to find for the defendant. The decisions do not uphold such a charge.

The special charge refused by the court complained of in the sixteenth assignment practically suggests that the test of ordinary care depends upon the driver's usual and customary manner of handling his team in acquitting him of negligence, and, believing that other assignments in view of the previous discussion and findings of fact by us are unimportant, we affirm the judgment of the trial court overruling all assignments, and it is so ordered. Affirmed.

### On Motion for Rehearing.

[12] Appellant in an extended argument, supplemented by multitudinous authorities, is insistent we erred in our original opinion, and that this cause should be reversed. We are inclined to think there is some misconception as to our duty and power to find facts in a given cause where our findings are in accordance with the judgment and verdict of the lower court, which is the same power in this respect existent in the Supreme Court before the creation of the Court of Civil Appeals; the Supreme Court under the law retaining jurisdiction only of legal questions. In this cause appellant argues: "There is not a great deal of testimony in this record, when it is analyzed, as to the popping of the whip by the driver." We thought there was considerable, especially when appellant's own driver testified "that just as Mr. Taylor's horse went to wheel I had popped the whip," at a distance of about 20 feet away; and on account of the team being slow he had to "hit pretty good licks," and, when he hit his horses on this particular occasion, he thought "the whip cracked." This whip was 5½ to 6 feet in length, and in approaching appellee's horse with his team on parallel line in passing he would not have missed the buggy over 5 feet according to his own testimony, considering which, in connection with the distance he was from appellee's horse, when the latter swerved and started to run, and the extension of a man's arm in the use of the whip practically towards the face of appellee's horse, we concluded was negligence. The driver in an approaching vehicle with that character of a whip, reaching in that direction, practically towards the face of the horse, especially when "the whip cracked,"

we are inclined to think was calculated to make "Dobbin" move; and however much care a man may use in popping his whip, or whatever the driver might think as to his own care, the indubitable act speaks for itself; especially when the actor, however much he thinks he is performing a harmless act, has full knowledge of the situation. We are not applying res ipsa loquitur, but the mere commission of an act, without more, in some situations may be negligence, and the law charges the party with the consequences. We thought it our duty to find this, and that from the great preponderance of the testimony such action caused the injuries, in fact, we believed the substantial justice of the cause demanded it. Of course, we may misconceive the application of the law with reference to the numerous special charges submitted by the appellant; but after having found this pertinent fact, believing the record cogent with the suggestiveness of the same, we are unable to see error, and, though in the original opinion we gave considerable discussion to appellant's brief, we believe some of it was probably unnecessary in view of the potency of the negligence of appellant's driver, so prominent in this record.

The Express Company is also insistent that we erred in the fifth paragraph of our original opinion in not sustaining its contention in regard to the appropriateness of the special charge refused by the trial court, and discussed by us.

Aside from the disintegration of this charge exhibiting distinct disjunctive propositions, and then conjunctive, which objection, of course, would be technical, however, in the face of our findings and the character of testimony in this record, we believe our ruling is not error. If appellant will permit us, we think the following with the interpolation in parentheses is what appellee meant, notwithstanding appellant insists that it is not our duty to so construe it: "At the time I had to look I saw what it was that caused the horse's fright. I saw a large express wagon with a very high top and was drawn by two horses. (I saw) they were driven by a man who was slashing his horses with a whip." We can understand that appellant's answer can be the interpolation is not what appellee said. However, we think the reasonable construction of his testimony is that that is exactly what he meant and that he was referring to the actions of the driver; and appellant in his special charge desires a segregation of the wagon and the top as a substantive issue to the jury for a substantial defense, which we think, without trenching upon the line of cases quoted by appellant, is improper as applicable to the facts of this case. Of course, a single fact or a grouping of facts may become a substantive defense in any case, and the difference in cases demands a discriminative ap-

plication of the rules, which we may, of course, be not observing in this cause; but it is to be noted that appellant does not negative any other ground of negligence to the jury as a predicate of plaintiff's recovery in the special charge, which could be a proximate cause, and with reference to which the jury is not instructed to find does not exist before finding the wagon and top was the proximate cause. It is often the case that a result will not occur without a concurring cause, and such other concurring cause still may constitute the proximate cause. Without an analysis of the long line of cases which hold it to be error for a charge of the court to make a segregation of particular circumstances, "disregarding other circumstances bearing upon the situation," we think that this charge trenches more upon that line of cases, considering the circumstances of this record, than the numerous decisions cited by appellant. Passmore on Instructions to Juries, p. 95.

We believe for the reasons given in our original opinion, and upon reconsideration of this record, that the substantial merits of this cause have been solved, and the trial court has not committed such error, if any at all, as will justify a reversal of this case, and the motion for rehearing is overruled.